No. 24,061.

J. N. SCHUR et al., *Appellants*, v. RURAL HIGH-SCHOOL DISTRICT
No. 1 OF OTTAWA COUNTY, et al., *Appellees*.

SYLLABUS BY THE COURT.

1. *Rural High-school District—When Organization May Be Questioned by
Private Individuals*. It is no justiciable concern of private litigants that
there may be an infirmity in the organization of a rural high-school dis-
trict, such infirmity being a matter of which the state alone may complain,
at the instance of its authorized public officers; but when such defect or
infirmity in the organization of the district likewise affects a proposed issue
of bonds which was authorized simultaneously with the proceedings to
organize the district, an action involving the same facts may be maintained
by private litigants to enjoin such illegal bond issue and consequent assess-
ments and tax levies, under section 265 of the civil code.

2. SAME—*Proposition to Establish Rural High-school District—Notice of Elec-
tion Must Define Territory to be Included*. Under chapter 284 of the Ses-
sion Laws of 1917, when a petition of legal electors is presented to the
board of county commissioners requesting the calling of an election on the
proposition to establish a rural high-school district and on the proposition
to issue bonds of the proposed district to build a schoolhouse and purchase
a site, it is essential that the publication notice of the election shall define
the territory to be created into such rural high-school district and to be
subjected to assessment and taxation for the payment of the bond issue,
so that the electors concerned may be duly apprised of their interest in
such election; and where the notice of the election contains a discrepancy
affecting 400 acres of the territory proposed to be subjected to the bond
issue, such notice is so materially defective as to vitiate the bond election
held pursuant thereto.

3. SAME—*Election—Establishing Rural High-school District—Form of Ballot
Legally Sufficient*. At an election called to vote on the proposition to estab-
lish a rural high-school district and on the proposition to issue bonds of the
proposed district to build a schoolhouse and purchase a site at a designated
place, a ballot which was so arranged as to give the electors an opportu-

nity to express their wishes on these two main propositions was legally sufficient, and it was unnecessary to subdivide the second of these into three separate propositions—(1) the issue of bonds, (2) the purchase of a site, and (3) the location of the schoolhouse.

4. SAME—*Election—To Be Held Only Once in Two Years.* The statutory provision that no election shall be called to vote on the proposition to establish a rural high-school district oftener than once in two years unless more than half the legal voters petition therefor relates to elections called to vote on the same or substantially similar propositions; and it has no application to a case where, after an election was called in a proposed district having a territory of 82 sections of land, a later election was called in another proposed district having a territory of 70 sections, only 17 of which were included in the territory concerned in the first election.

Appeal from Ottawa district court; DALLAS GROVER, judge. Opinion filed December 9, 1922. Reversed.

*C. W. Burch, B. I. Litowich, LaRue Royce,* all of Salina, and *F. D. Boyce,* of Minneapolis, for the appellant.

*E. C. Sweet* and *E. G. Smith,* both of Minneapolis, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs, who are resident taxpayers of Ottawa county, brought this action challenging the validity of the organization of the defendant rural high-school district, and alleging that its defendant officers and other officials were threatening to subject their properties within this district to illegal tax levies and assessments to pay a proposed issue of bonds in the sum of $25,000, which had been voted at an election irregularly called and held in the defendant district. Plaintiffs prayed that the bond issue and tax levies and assessments pertaining thereto be enjoined, and the organization of the district be adjudged illegal and that its officers be ousted.

Plaintiffs were defeated and appeal.

It will be noted from our summary of plaintiffs' allegations and prayer that their petition stated a cause of action in quo warranto and a suit for an injunction. Now, as an action in quo warranto alone, these private plaintiffs had no standing to maintain it. The state has provided its own officials, an attorney-general and a county attorney, to challenge the validity of corporate or quasi-corporate organizations in this state like cities, counties, townships, and school districts; and ordinarily it is no justiciable concern of private individuals that these public subdivisions and organizations of

the state may have some infirmity in their organization. So, too, the exercise of official powers and the ousting of official usurpers are matters of which the state alone may complain at the suit of its authorized legal representatives. And the fact that the state's proper officers decline to act does not give authority to private individuals to institute litigation on such matters of public concern. The exceptions to this rule are indicated in section 681 of the·civil code. All this 'has been expounded by this court many times. (*Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417.) In *Telephone Co. v. Telephone Association,* 94 Kan. 159, 162, 146 Pac. 324, it was said:

"The cases of *Houser v. Smith,* 80 Kan. 260, 101 Pac. 1001, and *The State, ex rel. Attorney-general, v. Bentley,* 80 Kan. 227, 101 Pac. 1073, considered together, are instructive. The former, although but briefly reported, was an injunction suit against the county treasurer of Gove county to restrain him from collecting a high-school tax on the ground that 'there was and is no high school in said county of Gove which has been established or created according to law.' (p. 260.) The plaintiffs were private citizens and were nonsuited. But a radically different result was obtained when an officer of the state challenged the legality of the organization of the high school. In the latter case the organization of the high school was declared void."

See, also, discussion, excerpts and citations in *Albach v. Fraternal Aid Union,* 100 Kan. 511, 515-518, 164 Pac. 1065.

But in this case it happens that the same facts which could only concern the state as an action in quo warranto do likewise state a grievance redressible by injunction at the instance of private litigants, as their properties within the defendant school district are about to be subjected to alleged illegal levies and assessments to pay for an alleged illegal bond issue. In that respect the action is maintainable by plaintiffs by express statutory authority. (Civ. Code § 265.)

"A private citizen whose burdens as a taxpayer will be affected by a proposed bond issue is authorized to maintain a suit to enjoin such issue as illegal under section 265 of the civil code." (*Hartzler v. City of Goodland,* 97 Kan. 129, syl. ¶ 1, 154 Pac. 265.)

Passing then to the questions which plaintiffs had a right to litigate in this lawsuit and which they have urged in this appeal, our attention is first directed to the notice of the election by the result of which the district was created and the issue of bonds authorized. In the first published notice the territory to be erected into this rural high-school district, aggregating about 70 sections of land,

contained an inaccuracy—certain lands in the proposed district being described as "the east half *of* the southwest·quarter of section 36," whereas in the proposed district to which the county superintendent had given her approval and which was described in the petition formally signed by the requisite number of legal electors and certified to the board of county commissioners, and pursuant to which the county board called the election, this territory was described and intended to be "the east half *and* the southwest quarter of section 36." In succeeding notices published prior to the election this inaccuracy was corrected, but unless the first notice was valid and sufficient, there was not the requisite statutory time, 21 days, between the first valid notice and the time when the election was held. (*Construction Co. v. Sedgwick County,* 100 Kan. 394, 397, 164 Pac. 281.)

It is hardly necessary to say that the spirit of the maxim, *"de minimis non curat lex,"* is consistently observed in the judicial work of this court wherever it is applicable; and at first blush it. would seem that in the use of the word "of" for "and" the *de minimis* rule would apply; but here the use of the preposition for the conjunction made a difference of 400 acres of land in the extent of the territory to be subjected to a $25,000 bond issue and the consequent tax levies to pay that bond issue. And if a discrepancy of 400 acres is *de minimis,* would a section, or two sections or four sections of land be likewise *de minimis?* Where should we draw the line?

It is argued, however, that the statute did not require that the election notice should describe the territory to be organized and bonded in the sum of $25,000. It is true that the statute does not prescribe this in specified language. The statute says:

"Notice of all such elections shall be given at least twenty-one days prior to the date of such election by posting printed or typewritten notices on the door of each schoolhouse in the proposed district and, by publishing the same twice in some newspaper published in each county in which the proposed district or any part of the proposed district lies." (Laws 1917, ch. 284, § 2.)

Observe the text: Notice to whom? To the legal electors concerned. Who are they? Must all the voters of the county concern themselves with such notice? Must they go to the office of the board of county commissioners and examine the petition to. see whether they and their lands and property are affected by the

election? We think not. They are entitled to depend on the information given them in the election notice itself. We may take judicial notice of the operative interpretation of this statutory provision. (*Harrison v. Benefit Society*, 61 Kan. 134, syl. ¶ 2, 59 Pac. 266; *Bank v. Reilly*, 97 Kan. 817, 823, 156 Pac. 747.) In the blank notices for calling such elections to organize rural high-school districts and to vote bonds for school buildings submitted therewith, which are prepared by the state superintendent of public instruction and in general use throughout the state, appropriate recitals and suitable space for defining the territory of such proposed districts are embodied in the notices. A notice of a school-bond election can hardly be said to be a notice at all unless it apprises the people concerned of their interest in the matter. Very different would it be if the district was already organized before the bond election was called. In that case, a notice briefly advising the electors of rural high-school district No. 1, Ottawa county, of the bond election would be altogether sufficient; but when this notice was given there was no such public institution as rural high-school district No. 1, Ottawa county, in existence; the same notice which called for the bond election called upon the electors concerned to vote "yes" or "no" on the establishment of such public institution. In *The State v. Bentley*, 80 Kan. 227, 101 Pac. 1073, the rule touching the necessity for strict regularity in the matter of notices of special elections was emphasized, and earlier cases were there cited, including *The State, ex rel., v. Echols*, 41 Kan. 1, 20 Pac. 523, in which it was said: "There is no more important step in an election than the giving of notice." (p. 4.)

This court is constrained to hold that the notice of the election required that it should define the territory which it was proposed to organize and bond as a rural high-school district, and that the discrepancy of 400 acres between the territory proposed to be organized and bonded and that recited in the notice of the election was of such gravity as to vitiate the election and to vitiate the proposed issue of bonds sanctioned thereat.

This conclusion will necessitate a reversal of the judgment, and it may be unnecessary to note the other matters urged by appellants further than to say that we think there was nothing the matter with the form of ballot used at the election, nor in the sufficiency of the number of propositions submitted thereon: (1) To establish the proposed district, and (2) To issue $25,000 in bonds to construct

a school building and purchase a site at Wells. (*Miely v. Metzger,* 97 Kan. 804, 806, 156 Pac. 753.) Nor do we think that the election was invalid because of the inhibition of the statute which provides that such an election shall not be called oftener than once in every two years unless more than half the legal voters petition therefor. (Laws 1917, ch. 284, § 2.) The earlier election proposed the creation of a rural high-school district composed of about 82 sections of land lying northward of the defendant district but which did include about 17 sections which are inscribed in the defendant district. The earlier election proposed to erect the rural high-school building at Lamar, some nine miles north of Wells. All that the two years' inhibition intended was to prevent the electors from being harassed with frequent elections on the same or substantially similar propositions. A proposition to erect a school district of 70 sections of land is a different proposition from one to create a district of 80 sections when only 17 of such sections were common to both propositions.

The judgment of the district court is reversed, and the cause is remanded with instructions to enjoin the proposed issue of bonds and to enjoin the assessment and levy of taxes therefor.

JOHNSTON, C. J., and BURCH, J., not sitting.