No. 39,227

Clarence K. Brown, *Appellant*, v. Summerfield Rural High School District No. 3, Marshall County, *Appellee*.

(262 P. 2d 943)

Opinion filed November 7, 1953.

*Clarence J. Malone*, of Topeka, argued the cause and was on the briefs for the appellant.

*Melvin R. Quinlan,* of Topeka, argued the cause, and *John S. Dean, Jr.,* of Topeka, and *Rowland Edwards,* of Waterville, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by the plaintiff, a resident taxpayer, to enjoin the defendant, Summerfield Rural High School District No. 3, Marshall county, Kansas, from issuing certain bonds and having corresponding taxes levied upon property of the plaintiff and other taxpayers similarly situated for the purpose of acquiring a site and paying the cost of constructing a school building to be used jointly by defendant and Common School District No. 137, the latter being located at Summerfield, Kansas, and within the defendant rural high-school district.

Plaintiff appeals from an order sustaining a general demurrer to his petition.

The petition alleged the bond election was illegal for three reasons. None of these grounds was sustained by the trial court. In this court appellant argues only that the election was illegal for the reasons set forth in the third ground of his petition. The established rule of this court is that it does not consider propositions presented to the trial court but not argued on appeal. They ordinarily are regarded as abandoned. (*State v. Anderson,* 172 Kan. 402, 241 P. 2d 742; *Blakeman v. Lofland,* 173 Kan. 725, 727, 252 P. 2d 852.)

We, therefore, turn to the portion of the petition now relied on by appellant. It reads:

"(c) That the defendant district in holding said purported election on May 5, 1953, did not conform with the general election laws of the state of Kansas, and more particularly as provided in G. S. Kans. 1949, 25-402, in that the defendant did not provide any voting booths or other means of protecting the secrecy of the ballots cast; that the polling place provided by the defendant for said purported election was the hall-way between the class rooms in the school building; that the election board were seated behind a table at one end of the hall and directly in front of them and facing them at a distance of not more than five feet were two chairs, the right arm of which provided writing area; that all the voters were directed to be seated in these chairs to mark their ballots; that there were no screens or guards of any nature provided to shield the marking of the ballots from the eyes of the election board or others who were in the hallway at the time; that no secrecy of the ballot was maintained or intended by those in charge of the election; that voters were compelled to mark their ballots in public; that such an election not only violates the general

election laws of the state of Kansas, but also Article 4, Section 1 of the Kansas Constitution; that the forcing of the voters of the defendant district to vote in public in said purported election subjected them to intimidation, coercion, fear of ridicule and dislike, or of socal or commercial injury, and other improper influences which result from a disclosure of a voter's political action; that the failure of the defendant to preserve the secrecy of the ballot in said purported election vitiates it and renders it null and void."

The district court concluded laws governing school district elections do not require booths and relied on *Abrahams v. School District*, 97 Kan. 325, 155 Pac. 16, in which it was held:

"The Australian ballot law does not apply to school-district elections held to determine whether or not bonds shall be issued to build a schoolhouse." (Syl. ¶ 1.)

and on *Stanhope v. Rural High-school District*, 110 Kan. 739, 205 Pac. 648, in which it likewise was held:

"Under the rural high-school law (Laws 1917, ch. 284) a bond election may lawfully be conducted in the same manner as an ordinary school-district election, and in such case the Australian ballot law, which is designed for use in subdivisions of the state larger than a school district, has no application, following *Abrahams v. School District*, 97 Kan. 325, 155 Pac. 16." (Syl. ¶ 6.)

Those decisions involved, in part, the form of the ballot and the then existing school laws. The present question does not pertain to the form of the ballot. The first question presented here is whether booths are required in rural high-school district bond elections. The answer requires examination of certain existing school laws together with an interpretation of article 4, section 1, of our state constitution, which provides:

"All elections by the people shall be by ballot. . . ."

Appellant argues the guarantee of the ballot implies secrecy and, among other cases, relies on *Lemons v. Noller*, 144 Kan. 813, 63 P. 2d 177, involving the absentee ballot law, in which it was held:

"Such right of secrecy as may be granted or preserved under article 4, section 1, reading: 'All elections by the people shall be by ballot' is a right personal to the elector and may be waived by him where such waiver is not prohibited by statutory enactment." (Syl. ¶ 5.)

Appellant stresses the following provision of G. S. 1949, 72-2002, pertaining to school district bond elections:

"The said election shall be conducted in all respects as are *general elections* under the laws of the state. . . ." (Our italics.)

He then directs attention to the fact that G. S. 1949, 25-402, pertaining to general elections, requires booths. The last section does

require booths for general elections. The difficulty with appellant's contention relative to G. S. 1949, 72-2002 is that it was repealed by chapter 395, laws 1951, which is a general act to *clarify and codify* certain laws governing schools. The pertinent part of section 45 of that act (G. S. 1951 Supp. 72-2018), pertaining to elections for issuance of bonds for any school purpose, now provides:

"Whenever an election is required for the issuance of bonds for any purpose by a common-school district, a community high-school district, or a rural high-school district, and the procedure for calling and holding *a bond election* in such district is not specifically provided by law, the procedure shall be as provided in this article. . . . The vote at such election shall be by ballot and such ballot shall comply with the usual requirements for an official ballot for public office insofar as such requirements are applicable thereto . . . Such elections shall in all respects be governed as provided by law for holding *school elections in the district.*" (Our italics.)

The question in this case, therefore, remains whether booths are required for rural high-school district elections. It is true, as appellant contends, that G. S. 1951 Supp. 72-3541, pertaining to elections for the *organization* of a rural high-school district, among other things, provides:

"An election. on a proposition *to organize a rural high-school district* shall be held in accordance with the *general election laws* except as otherwise provided by this article . . .," (Our italics.)

and that the pertinent part of G. S. 1951 Supp. 72-3551, relating to elections for the *disorganization* of such school district, reads:

"Such election shall be held and notice given by the district board in the same manner as provided for in the case of an election *to organize* a rural high-school district." (Our italics.)

Many other school elections are provided by law. Except for the two above provisions with respect to the organization and disorganization of a rural high-school district our attention is called to no statute which directs that the general election law shall be followed or that booths are required for school-district elections. The references in this paragraph are to G. S. 1951 Supp. See provision for election of officers of a rural high-school district, 72-3542; elections for consolidation or annexation of rural high-school districts, 72-3549, 72-824, 72-828, 72-829; for elections involving attachment of territory adjacent to a rural high-school district, 72-3550; bond elections for purchase or improving a site, or sites, constructing, furnishing, equipping, repairing, remodeling or making additions to schoolhouses or other necessary buildings, etc., 72-2017. The fore-

going is not intended to be a complete reference to statutes pertaining to school elections. In view of the far-reaching effect of a decision requiring installation of booths at all school elections and by reason of lack of clear statutory direction on the subject we are loath to say the legislature intended the general election laws should apply to school elections other than those it expressly designated.

The fact that in its act of 1951 (Chap. 395) to clarify and codify certain laws governing schools it repealed G. S. 1949, 72-2002 requiring school-bond elections to be conducted in all respects as general elections are and enacted G. S. 1951 Supp. 72-2018, previously quoted, is an indication it intended to eliminate such requirement. From the fact it further expressly provided elections for the organization and disorganization of rural high-school districts should be held in accordance with the general laws and did not so prescribe as to other school-district elections, it would appear it did not intend the general election laws should apply to the latter. There, however, is another consideration which prompts us to conclude the demurrer to the petition was properly sustained.

Before turning to such other consideration it may not be amiss to say we are not inclined to regard lightly appellant's general contention that secrecy of the ballot is a vital matter in a school-bond election. Schools perform a highly important function in our concept of life. Most citizens fully understand that the cost of education is a large part of the tax dollar. School-bond elections often become highly controversial in character. It would appear that secrecy of the ballot at a school-bond election, at an election of school officers and at the various other school elections provided by law is, or often becomes, as important to the people of a school district as secrecy at an election pertaining to the organization or disorganization of a school district. These, however, are matters with which courts do not interfere. They rest in the wisdom and discretion of the legislature. No question involving the constitutional exercise of such legislative power is raised here.

We come now to an additional consideration referred to previously. Having concluded the law does not require booths for the instant election, does the petition nevertheless state a cause of action for the injunctive relief sought?

It is admitted the election was by ballot. Appellant argues the guarantee of the ballot implies secrecy. Do the allegations of the petition render the election a nullity? The petition was not mo-

tioned and all facts well pleaded must be liberally construed in favor of the pleader. Of course, that does not mean the demurrer admits legal interpretations of facts alleged (*Barnes v. Hilton*, 172 Kan. 345, 349, 239 P. 2d 966) or naked or erroneous conclusions (*Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 58, 244 P. 2d 228). The allegations the election was void because defendant did not conform with the general election laws, as provided by G. S. 1949, 25-402, and with article 4, section 1, of our constitution constitute legal conclusions; the allegation that no secrecy of the ballot *was intended* is a conclusion; specific allegations concerning the physical description of the voting place must be given precedence over general averments that the electors were *forced to vote in public* (*Pierce v. Schroeder*, 171 Kan. 259, 264, 232 P. 2d 460); a bare allegation electors were forced to vote in public, without any additional averment of facts tending to show it was reasonably impossible to conceal the nature of the vote on a small ballot containing only two squares for a "Yes" or "No" vote, will ordinarily be regarded as a statement in the nature of a conclusion where the purpose of the allegation is to intimate that the vote could not be secretly cast.

Appellee insists other allegations constitute mere conclusions. There may be some merit in the contention but we are not inclined to be unduly critical of matters actually alleged, although perhaps not perfectly. It is the lack of important allegations to be referred to presently which we think cannot be ignored. Before directing attention thereto it may be well to observe this was not an action to compel the board of the defendant district to provide booths or other facilities in which ballots could be marked with complete assurance of secrecy. This is an action to nullify an election on the theory it was utterly void and, therefore, issuance of the bonds should be enjoined.

There is no allegation any elector complained of the facilities provided. Perhaps that fact is not too important. But we find no allegation appellant or any other elector was intimidated, coerced, put in fear of ridicule, dislike or any other injury. The strongest allegation in that respect is that the voter was *subjected* to the influences mentioned. Appellant, however, fails to allege he, or any other elector, by reason of the alleged subjection, refused to vote or that any vote cast was affected in the slightest by the conditions he describes. In fact the petition does not even allege such condi-

tions in this instance *tended* to defeat the free expression of the electors' intentions. True appellant, in substance, so argues but an argument is not a substitute for a lack of allegations in a pleading challenged by demurrer.

For all that appears in the petition every elector cast his ballot precisely as he intended to notwithstanding the voting facilities. This court does not intend to place its stamp of approval on any practice which frustrates or actually tends to prevent the free and honest expression of an elector's will. But how, in the light of this petition, can it reasonably be said the will of any elector was thwarted?

It is observed there is a complete failure to allege that if booths or other complete voting privacy had been provided the proposal to issue the bonds would have been defeated. In fact, insofar as the allegations of this petition are concerned, an overwhelming majority may have favored issuance of the bonds and may have been entirely willing such fact should be publicly known. Under all these circumstances what practical purpose could be served by enjoining the issuance of the bonds in this particular case? The only result would be to compel another election without the remotest allegation in the petition, or even a contention that the result would be different.

It seems to us an annulment of the election under all the circumstances mentioned would constitute drastic action. We previously have indicated the statutes contain no directory provision to furnish booths at a school bond election. However, every departure even from directory provisions does not necessarily compel annulment of an election. In *Stanhope v. Rural High-School District*, 110 Kan. 739, 205 Pac. 648, involving a school bond election it was said:

"We have often held that irregularities in elections, where there had been departures from directory provisions of the statute, did not vitiate such elections where such irregularities did not frustrate or tend to prevent the free expression of the electors' intentions, nor otherwise to mislead them." (p. 744.)

In the recent case of *Olson v. Fleming*, 174 Kan. 177, 254 P. 2d 335, we held:

"In an action to set aside a school election held pursuant to G. S. 1951 Supp. 72-2017, for the issuance of bonds, on the ground that illegal votes were cast, it is necessary for the plaintiffs *to plead and prove* that enough of the alleged illegal votes were cast either for or against the issuance of the bonds to change the result." (Syl.) (Italics supplied.)

See other cases cited in the above opinion.

We have not overlooked decisions of this and other courts cited by the parties. We need not labor the opinion further in the light of the particular petition before us.

The order sustaining the demurrer is affirmed.