No. 39,653

E. M. Tyler, E. C. Johnson, J. C. LeBow, G. R. Kramer, M. E. McCarthy, W. J. Turner, H. J. Taylor, G. A. Bergstedt, A. L. Hale, W. D. Hooker, C. T. Jones, A. T. Kramer, J. V. Zimmerman, Gerald F. Thompson, John R. Kirk, J. R. Spencer, R. K. Voss, Mary F. Hulse, Lawrence Thompson, Murrell Graham, Alma Hamilton, Mildred Miller, Vern Scarrow, Glenn S. Wiley, Lendell Graham, D. S. Hamilton, Dallas R. Miller and Ed Loomis, *Appellants*, v. Common School District No. 76, a body corporate; and Francis W. Frye, Clarence Smith and L. E. Nelson, as members of the School Board of Common School District No. 76, *Appellees*.

(279 P. 2d 302)

Opinion filed January 22, 1955.

*Geo. E. Teeple* and *J. R. White*, both of Mankato, and *A. W. Relihan*, *T. D. Relihan* and *T. E. Relihan*, all of Smith Center, were on the briefs for the appellants.

*Melvin R. Quinlan*, of Topeka, argued the cause, and *John S. Dean, Jr.*, of Topeka, and *L. E. Weltmer, Roderick E. Weltmer* and *L. M. Weltmer*, all of Mankato, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Parker, J.; This is an appeal from an order sustaining a demurrer to a petition in an injunction action.

The parties named as appellants (plaintiffs below) in the title of this opinion commenced the action against the persons named therein as appellees (defendants below) by filing a petition in the district court of Jewell County. In due time the defendants attacked such pleading by a lengthy motion to strike. For present purposes it may be said this motion contained fourteen grounds, seven of which were sustained and seven overruled by the trial court. Following this action defendants demurred to the petition on grounds (1) the plaintiffs lacked legal capacity to maintain the action; (2) failure of such pleading to state facts sufficient to constitute a cause of action; and (3) of misjoinder of several causes of action. Prior to argument the defendants withdrew the third ground of their demurrer. After argument the trial court over-

ruled the first ground of such demurrer but sustained the second ground thereof on the basis the petition did not state facts sufficient to constitute a cause of action in favor of plaintiffs and against the defendants. Thereupon plaintiffs perfected an appeal from the ruling on the demurrer and from the order sustaining portions of the motion to strike.

The petition, like the motion to strike, is also lengthy. Nevertheless the allegations remaining therein, after deleting allegations stricken as a result of the ruling on the motion, serve a multiple purpose which cannot be accurately reflected without quoting them at length. Thus limited the allegations of such pleading read:

"That the post-office address of all of the plaintiffs is Mankato, Kansas, and that all of the plaintiffs reside within the bounds of Common School District No. 76 located in Jewell County, Kansas, and are qualified electors of said district.

"That Common School District No. 76 is a duly constituted common school district and a body corporate located entirely within the bounds of Jewell County, Kansas, and contains within its corporate bounds a city of the third class. That said Common School District No. 76 is hereinafter referred to as the school district.

"That the defendants Francis W. Frye, Clarence Smith and L. E. Nelson are and were at all times herein mentioned the duly elected, qualified and acting members of the school board of said school district and are hereinafter referred to as the school board.

"That at all times herein mentioned, the school district owned a school site located in Bishop's Addition to the City of Mankato, Kansas, consisting of a plot of land 350' x 350', upon which said school district maintains a grade school building in which school is regularly conducted separate and apart from a high school maintained by said school district in another part of the City of Mankato, Kansas.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That at all times herein mentioned, the statutory limitation of the bonded indebtedness of said school district was such as to require the school district to make application to the Board of School-fund Commissioners of the State of Kansas for authorization to issue excess bonds in order to obtain sufficient money for the acquisition of the proposed site and the constructing and equipping of a building thereon.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

".   .   . the school board did on or about the 14th day of April, 1954, file an application with the Board of School-fund Commissioners requesting permission to vote excess bonds for the acquisition of the site North and immediately adjacent to the high school site and did thereafter obtain an order for authority to vote such bonds for the acquisition of said particular site and the constructing and equipping of a grade school building thereon. .   .   .

"That thereafter the school board duly called a special bond election to be held on May 18, 1954, for the purpose of authorizing the issuance of bonds in the amount of $209,000.00 for the purpose of providing funds to pay the cost of acquiring a site on the North and immediately adjacent to the high school building, within said school district, and to erect thereon and equip a grade school building. That notice of said election was duly and regularly published, and on May 18, 1954, at a special bond election duly held, the following proposition was presented to the electors of said school district by ballot, to-wit:

" 'SHALL THE FOLLOWING BE ADOPTED?

" ' "SHALL Common School District No. 76, Jewell County, Kansas, issue and sell General Obligation Bonds of said School District in the sum of not exceeding TWO HUNDRED NINE THOUSAND DOLLARS ($209,000.00), for the purpose of providing funds to pay the cost of acquiring a site on the North and immediately adjacent to the site of the present High School Building, located at Mankato, Kansas, within said Common School District No. 76, Jewell County, Kansas, and to erect thereon, and on the present high school site, and equip a building for Grade School purposes, at a cost of approximately $209,000.00, under the authority of Sections 75-2315 to 75-2318, both inclusive, and Sections 72-2017 and 72-2018 of the 1953 Supplement to the General Statutes of Kansas for 1949, and Article 1 of Chapter 10, of the General Statutes of Kansas for 1949, and all amendments thereto?"

" 'To vote in favor of the bonds make a cross X mark in the square after the word "YES."

" 'To vote against the bonds make a cross X Mark in the square after the word "NO."

" 'YES (   )

" 'NO (   )'

"That by the published notice of said special bond election and by the ballot presented to the electors of said school district at said election held on May 18, 1954, the school board, for the purpose of preventing a free selection of a site and preventing said electors from retaining the present grade school site, presented to said electors one proposition containing two questions, which two questions were substantially as follows:

"Question 1: Shall the site of a new building for grade school purposes be located North and immediately adjacent to the site of the present high school building?

"Question 2: Shall the school district issue and sell its general obligation bonds for providing funds to pay the cost of acquiring a site and erecting and equipping a building thereon?

"That said proposition so presented to the electors by ballot on May 18, 1954, was dual and violative of Section 72-2018, G. S. 1953 Supp., in that more than one question was submitted on the ballot; that said questions were not separately numbered and printed and were not separated by a broad, solid line one-eighth of an inch wide. That the said electors of said school district were thereby deprived of their right to vote on each question separately. That the call for said election, published notice of said election and the ballot used at said election were designed for the purpose of preventing

the electors of said school district from exercising a free selection of a site for a grade school building and from retaining the present site for a new grade school building. That at said special bond election held on May 18, 1954, a ·majority of 18 votes were cast in the affirmative on the dual proposition so presented to the electors as aforesaid.

"That at all times since said election, the school board has relied upon said election for two purposes, namely:

"1. Either (a) as constituting a change of school house site as provided by Section 72-501, G. S. 1949, or (b) as the designation of an additional site in lieu of the exercise of that function at an annual or special meeting of the qualified electors of the school district as provided by Section 72-406 and Section 72-406a of G. S. 1953 Supp.; and

"2. As authorizing the school board to issue and sell general obligation bonds of the school district in the sum of $209,000.00 for the purpose of providing funds to pay the cost of acquiring and improving a site and the erecting and equipping of a building thereon.

"That no additional site for the construction of a new grade school building has been designated by ballot at any annual school meeting or special school meeting called for that purpose as provided by Section 72-406 and Section 72-406a of G. S. 1953 Supp. That the 1954 annual school meeting has been held and that the school board does not intend to call any special meeting of the qualified electors of the school district for the designation of an additional school site. That the school board is now in process of printing and selling of the bonds of said school district and intend to use the proceeds thereof for the acquisition, either by purchase or condemnation, of four residential properties adjoining the high school site on the North and are intending to enter into contract for the improvement of said site and the construction and equipping of a grade school building thereon. That in all of said purposes the school board is relying upon the special bond election held on May 18, 1954, as a mandate of the electors of the school district upon the two questions illegally presented to said electors in one proposition. That in the opinion of the petitioners it is not the will of the majority of the electors of said school district either (a) that the site of the present grade school be changed, or (b) that an additional site be designated.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Plaintiffs further allege that the said school district maintains but one grade school and that the defendants intend to abandon the present grade school site and change the site from its present location to the location immediately North and adjacent to the present high school site.

"Plaintiffs allege that the special bond election held on May 18, 1954, was illegal and void; that they and the other electors of the school.district have been illegally deprived of the right to select a site for a new grade school building; that said school board should be permanently enjoined from the issuance and sale of general obligation bonds of the school district and from the acquisition, either by purchase or condemnation, of the proposed site North and immediately adjacent to the high school site and from entering into any contracts for the acquisition of said site; that the school board should be further permanently enjoined from using any funds obtained from the sale of any general

obligation bonds for the improving of the last mentioned site or for the construction and equipping of any buildings thereon; that said general obligation bonds voted at the special bond election on May 18, 1954, should be declared null and void.

"Plaintiffs state that they are all taxpayers residing within the bounds of the school district and that they have a special interest in the matters herein alleged in that their taxes will be increased as a result of the illegal special bond election held on May 18, 1954, unless the relief herein sought is granted. That by reasons of the facts herein alleged, the plaintiffs have no adequate remedy at law and therefore invite the equitable jurisdiction of this court for the relief herein sought.

"WHEREFORE, plaintiffs pray that the special bond election held on May 18, 1954, be declared void and that the school board be permanently enjoined and restrained from taking any action as a result of said election; that any general obligation bonds printed and sold as a result of said election be declared void; and that the school board be permanently enjoined from the use of any of the proceeds derived from the sale of said bonds; that said school board be enjoined from the acquisition by purchase or condemnation of any land North and immediately adjacent to the present high school site; and that said school board be further specifically enjoined from entering into any contracts for the improvement of said site or erecting and equipping of any building thereon; and in the ALTERNATIVE, in the event that said special bond election is by the court held to be legal and valid, that said school board be permanently restrained and enjoined from the acquisition of a site North and immediately adjacent to the present high school site or the erection and equipping of a building thereon until such time as an additional site has been designated at a regular annual meeting of the qualified electors of the school district or at a special meeting of said qualified electors called for that purpose; and plaintiffs further pray that they have all such other and further relief as may be equitable and just, the premises fully considered."

On November 18, 1954, more than two months after appellants had filed their abstract and brief, appellees filed a motion to dismiss the appellants' appeal, predicated on a material change in circumstances. This motion was passed with leave to renew on the hearing of the cause on the merits and appellants were granted permission to submit a brief reflecting their views with respect thereto. Following this action appellees filed their brief, approximately one-third of which relates to such motion and appellants filed a reply brief consisting of twenty-two typewritten pages, eighteen pages of which deal with claims advanced by appellees in connection therewith. It will not be necessary to here detail or discuss questions raised by the parties in connection with the foregoing matter.

It suffices to say that the motion, the brief in support thereof,

and the brief in opposition thereto, present new and disputed issues of fact which were not involved or considered by the trial court in ruling on the demurrer to the petition and which an appellate court is in no position to determine on an appeal from that ruling. Under like circumstances this court is committed to the rule (see *Wahl v. Walsh*, 177 Kan. 176, 277 P. 2d 623; *Whitaker v. Douglas*, 177 Kan. 154, 277 P. 2d 641; *Southard v. Mutual Benefit Health & Accident Ass'n*, 177 Kan. 26, 276 P. 2d 299; *Lee v. Beutel*, 170 Kan. 54, 223 P. 2d 692; *Elam v. Bruenger*, 165 Kan. 31, 193 P. 2d 225; *American Glycerin Co. v. Freeburne*, 157 Kan. 22, 25, 138 P. 2d 468) that it cannot reach out and make additional facts a part of a petition for purposes of determining the propriety of a ruling on a demurrer. By the same token where—as here—the propriety of a ruling on a demurrer is the sole appellate issue involved it will not reach out and consider new and controverted factual issues, brought into the case by a motion to dismiss in an attempt to dispose of the appeal on the basis of such issues. Under the confronting circumstances our view is the new and disputed questions of fact on which appellees rely to sustain their motion to dismiss must be brought into the action by proper pleadings and that such disputed factual issues, as well as questions of law arising when they have been determined, must be disposed of by the trial court before their legal effect can be determined on appellate review. We therefore turn to the ruling on the demurrer.

In view of the fact the issue about to be considered reaches us on a demurrer, it should be pointed out and must be kept in mind, that in determining the sufficiency of the petition we have no alternative but to assume the facts are as pleaded and not as they might appear at a trial after the joinder of issues by proper pleadings.

Resort to the petition, giving them the benefit of inferences to which they are entitled, discloses, among others, allegations to the effect that the appellee district is a common school district in which is located a city of the third class; that other appellees named are duly elected members of the district board; that the appellants are taxpayers within its bounds and at the time of the institution of the action were entitled to maintain it under the provisions of G. S. 1949, 60-1121; that on all dates in question the district owned a common school site on which was a school building; that no additional site for the construction of a new school was ever designated

by ballot at any annual school meeting or special school meeting called for that purpose as provided in G. S. 1953 Supp. 72-406 and 72-406a, nor has there been an election submitted to the qualified electors of the district for a change in such school house site as provided by G. S. 1949, 72-501; that notwithstanding the school board called a special bond election and at the election so held submitted the proposition quoted at length in the petition; that such proposition so presented to the electors of the district by ballot was dual and violative of G. S. 1953 Supp., 72-2018, in that more than one question was submitted on the ballot and that such questions were not separately numbered and printed and were not separated by a broad, solid line one-eighth of an inch wide, as required by the provisions of such section; that at all times since such election the school board has relied thereon as constituting a change of school sites as provided by G. S. 1949, 72-501, or as the designation of an additional site in lieu of the exercise of that function at an annual or special meeting of the qualified electors of such district as provided by G. S. 1953, Supp. 72-406 and 72-406a, and as authorizing the school board to issue and sell general obligation bonds of the district in the sum of $209,000.00 for the purpose of providing funds to pay the costs of acquiring and improving such site and the erecting and equipping of a building thereon; and that on the strength of such bond election the appellees intend to and, unless enjoined from doing so, will change the present common school site from its present location to the location described in the election ballot, namely; to the location immediately north and adjacent to the high school site; issue and sell bonds to procure funds for the purchasing of such site and the constructing of a building thereon; and use and expend the funds so obtained from the sale of such bonds for such purpose.

Appellants contend the foregoing allegations, and others appearing in the petition as heretofore quoted, are sufficient to state a cause of action for injunctive relief. Boiled down the paramount contention advanced by them is that when all the allegations of their petition are considered together and accepted as true they establish that the question submitted to the electors by the ballot at the special bond election was dual in character in that it contained two questions, which were submitted to the electors in one proposition, in violation of G. S. 1953 Supp., 72-2018, with the result the election was illegal and gave the school district board no

power or authority to issue or sell bonds or to expend money derived therefrom for the purpose set forth in the single proposition submitted at such election to the electors of the district.

G. S. 1953 Supp., 72-2018, which appellants claim was violated by the ballot submitted to the electors of the district, relates to elections required for the issuance of bonds for any purpose by a common school district and deals with the procedure to be followed in holding the election. Among other things it requires that the vote at a bond election, such as is here involved, shall be by ballot, specifies what shall be printed upon the ballot, and finally provides:

". . . If more than one proposition or question be submitted on such ballot the different propositions or questions shall be separately numbered and printed and be separated by a broad, solid line one-eighth of an inch wide. . . ."

The foregoing section of the statute is comparatively new, having been first enacted by the Legislature in 1951, and we know of no case specifically holding that allegations of a petition disclosing a dual question has been submitted at a bond election in violation of its terms state a cause of action for injunctive relief on the basis its submission vitiates the election. However, we have decisions (See, e. g., *Kansas Utilities Co. v. City of Paola,* 148 Kan. 267, 80 P. 2d 1084, and cases there cited) holding that the submission of such a question in violation of a like requirement in a similar statute has that effect. We know of no reason why a violation of the same requirement in G. S. 1953, 72-2018 should not be given the same force and effect.

Thus it becomes apparent the decisive factor in the case at bar is whether the allegations of the petition disclose facts which, if accepted as true, establish that two questions were submitted to the electors in one proposition at the involved bond election.

We now direct attention to matters which we believe must be considered and are entitled to weight in determining the question decisive of the appellate issue involved.

G. S. 1949, 72-501, dealing with common school districts, such as the one here involved, provides that a school house site of any such district shall not be changed until the question shall have been submitted by the school board to the qualified electors of the district at an election called for that purpose and a majority of all the qualified electors voting on the proposition shall have declared by their ballots in favor of changing the same. In addition

G. S. 1953, Supp., 72-406, provides that the qualified electors of such a school district at any annual meeting by a majority vote of those voting shall have the power to designate by ballot the site for a school house, and G. S. 1953, Supp., 72-406a grants like power to the qualified electors of any such district at a special meeting if action is taken as specified in the notice of that meeting. To say the least the sections of the statute just cited definitely indicate that propositions to change a school house site from one place to another or for the designation of an additional site for a school house on a particular site must be classified as propositions of a type separate and distinct from a proposition presented at a school bond election for the issuing of bonds to supply funds for the construction of a building and the purchase of a site without specifying where it is to be located.

Resort to the proposition submitted at the bond election, particularly the language "for the purpose of providing funds to pay the cost of acquiring a site on the North and immediately adjacent to the site of the present High School building," leads to the inescapable conclusion that it either contemplated the selection of a particular site through the medium of the proposition submitted or assumed that the site designated had been theretofore legally selected in the manner contemplated by the sections of the statute last above referred to. If it be contended such proposition contemplated a change of the site or the selection of a new site we have no doubt the inclusion of that question in the proposition as submitted made it dual in character and called for the separate submission of such question in the manner required by the heretofore quoted portion of G. S. 1953, Supp., 72-2018. This, we may add, is so even though it be conceded, as appellees contend, G. S. 1949, 72-1023, authorizes the submission of such a question at a bond election. It is to be noted such section has no application to a question relating to duality of a proposition submitted at such an election. In fact resort thereto discloses that it makes provision for the submission of numerous questions at a bond election, which no one would have the audacity to suggest are other than separate and distinct. On the other hand, if it be contended the proposition submitted assumes that a site had been legally selected it must be remembered the allegations of the petition are specific to the effect that that had not been done.

Finally it can be stated that in the face of the allegations of the

petition the proposition submitted, in and of itself, is subject to the construction that some electors of the district may have voted for or against the proposition submitted on the basis of the particular site to be selected; others may have voted for or against it on the theory the site had already been legally selected; others may have voted for or against it with the belief the proposition submitted was to supply funds for the purchase of a site and the construction of a building thereon; with the site to be subsequently selected in conformity with sections of the statute to which reference has heretofore been made; and still others may have refrained from voting at all due to the fact they could not make a choice between the two propositions or did not desire to vote for both of them.

Based on what has been heretofore stated and when all the facts as pleaded are accepted as true and then considered in connection with the proposition submitted at the bond election we are impelled to the conclusion the petition states a cause of action for injunctive relief, under the provisions of G. S. 1949, 60-1121, on the basis such proposition was dual in character, i. e., that two questions were actually submitted therein as one without complying with the clear and unequivocal provisions of G. S. 1953, Supp., 72-2018, heretofore quoted. With the petition so construed it necessarily follows that the trial court's ruling on the demurrer was erroneous and cannot be upheld.

In reaching the conclusion just announced it should be stated that in this opinion we have purposely refrained from discussing or even mentioning contentions, and the authorities relied on as upholding them, advanced by the parties in connection with matters which might have a bearing on, or be decisive of, their respective rights on a trial of this cause on its merits. All we here hold is that from the standpoint of stating a cause of action for injunctive relief, under the provisions of 60-1121, *supra,* the allegations of the petition must be deemed to be sufficient.

One point remains to be mentioned. An appeal was perfected from the trial court's ruling in sustaining certain portions of the motion to strike allegations from the petition. Appellants state that if, as we have decided, the petition, as deleted by order of the trial court, states a cause of action, no ruling of this court on the propriety of the lower court's ruling on appellees' motion to strike is invited or required. Under the circumstances the ap-

peal from that ruling is to be regarded as abandoned and requires no discussion or decision on appellate review.

The order of the trial court sustaining the demurrer to the petition is reversed with directions to set it aside.

ROBB, J., not participating.