No. 41,420

Loyle Bishop, C. H. Chambers, Jr., W. P. Dahnke, James Dargon, C. W. Davis, C. R. Engel, Myron Holman, Clay P. Holmes, W. H. Morrison, Jr., Ferd C. Mueller, Max R. Murray, Robert S. Murray, Edna L. Parsons, Charles E. Roebuck, Eugene Roos, Joe L. Rutherford, Al Silk, Roy Spear, Howard F. Welch, G. G. Yancey, and Joseph R. Wright, *Appellants,* v. Shawnee & Mission Townships Turkey Creek Main Sewer District No. 1, Johnson County, Kansas, and Harry King, Jr., Herman F. Higgins, and M. J. Zeigler, as County Commissioners of Johnson County, Kansas, and the Governing Body of Shawnee & Mission Townships Turkey Creek Main Sewer District No. 1, *Appellees.*

(336 P. 2d 815)

Opinion filed March 18, 1959.

*Louis A. Silks, Jr.,* of Merriam, argued the cause and was on the briefs for the appellants.

*James B. Pearson,* of Mission, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action by several taxpayers in the Shawnee and Mission townships Turkey Creek main sewer district No. 1 to enjoin the district and the officers thereof from levying a proposed tax on their property. From an order of the trial court sustaining defendants' demurrer, plaintiffs appeal.

Plaintiffs' petition alleged that in a special election called by defendants on May 27, 1958, the question of authorizing construction of a main trunk sewer system and issuance of bonds of the sewer district to pay for the same was submitted to the electors of the sewer district and was carried by 107 votes out of 4799 votes cast, and that as a result of the election defendants intended and were taking action to authorize construction of the sewer system, issuance of notes and bonds for the cost thereof, and levy of taxes on the property owners in the district. Plaintiffs further alleged that the special bond election and the proposed tax levy were illegal and void (1) because the sewer district was unlawfully organized, and (2) because of irregularities in the special bond election.

Plaintiffs alleged that G. S. 1957 Supp., 19-2787 *et seq.,* under which defendant sewer district was organized, violated article 2, section 17 of the Kansas constitution, in that it was a special law where a general law could have been made applicable; that the city of Merriam consented to inclusion in the sewer district on the condition that sewers would be constructed as provided by "Plan B," submitted by the district's consulting engineers, and that not-

withstanding this conditional consent defendants submitted to the voters the bond question on a sewer system to be built under modified "Plan A," which voided the consent of the city of Merriam and rendered the boundaries of the sewer district illegal; that the creation of the district was not in conformity with G. S. 1957 Supp., 19-2798 and 19-27,109, and that certain lands were illegally excluded from the district after its creation.

Plaintiffs next alleged that the election was not conducted by the election commissioner of Johnson county as required by G. S. 1949, 19-3419, 19-3422, 19-3423 and 19-3434; that the resolution calling the bond election was not passed until after the first publication of the notice of election and that the notice of election listed polling places by nonexistent precincts; that electioneering was allowed within the polls, unqualified persons were allowed to vote and qualified persons were denied the right, certain authorized persons were not permitted to act as watchers, unauthorized persons were permitted to handle the ballots, and irregularities occurred in closing the polls; that the mentioned irregularities cast uncertainty on the result of the election and required rejection of the entire vote.

Defendants demurred to the petition on the ground that plaintiffs had no legal capacity to bring the action and the petition did not state facts sufficient to constitute a cause of action. The trial court, in sustaining defendants' demurrer to the petition, stated, in substance, that an action to inquire into the validity of proceedings creating a municipal corporation or modifying its boundaries could not be maintained by private individuals and could only be prosecuted by the state acting through its proper officers; that the plaintiffs, under G. S. 1949, 60-1121, were proper parties to bring the action to enjoin the levy and collection of taxes, but they failed, under this section, to state a cause of action.

Plaintiffs maintain their petition stated facts sufficient to show the proposed tax levy on their property was illegal and they had a right to bring this action under G. S. 1949, 60-1121. Defendants, on the other hand, contend plaintiffs' action was based on the alleged illegality of the organization of the sewer district and, notwithstanding the provisions of 60-1121, plaintiffs were without legal capacity to collaterally attack the organization of the district. Furthermore, defendants maintain plaintiffs failed to state a cause of action relating to the alleged election irregularities in view of

the absence of allegations that the purported irregularities changed the result of the election.

It has long been the established rule in this jurisdiction, as elsewhere, that the legality of the organization or reorganization of a municipal corporation cannot be questioned in a collateral proceeding or at the suit of a private party. Actions to inquire into the validity of proceedings creating a municipal corporation or affecting the existence of the corporation may be prosecuted only in a direct proceeding by the state acting through its proper public officers. (*A. T. & S. F. Rld. Co. v. Wilson, Treas.,* 33 Kan. 223, 6 Pac. 281; *Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417; *Chaves v. Atchison,* 77 Kan. 176, 93 Pac. 624; *Mason v. Kansas City,* 103 Kan. 275, 173 Pac. 535; *Schur v. School District,* 112 Kan. 421, 210 Pac. 1105; *Wellman v. City of Burr Oak,* 124 Kan. 780, 262 Pac. 607; *Scamahorn v. Perry,* 132 Kan. 679, 296 Pac. 347; *Smith v. City of Emporia,* 168 Kan. 187, 211 P. 2d 101, 13 A. L. R. 2d 1272; *Kirts v. Miami County Comm'rs,* 168 Kan. 739, 215 P. 2d 642; *Lampe v. City of Leawood,* 170 Kan. 251, 225 P. 2d 73; 1 McQuillin, *Municipal Corporations* [3d ed.] § 3.51.)

The reason for the mentioned rule is well stated in *A. T. & S. F. Rld. Co. v. Wilson, Treas.,* supra, p. 228, as follows:

"It would be dangerous and wrong to permit the existence of municipalities to depend on the result of private litigation. Irregularities are common and unavoidable in the organization of such bodies, and both law and policy require that they shall not be disturbed except by some direct process authorized by law, and then only for very grave reasons."

The fact that the state's proper officers decline to act does not give authority to private individuals to institute litigation on such matters of public concern. (*Schur v. School District,* supra; *Wellman v. City of Burr Oak,* supra.)

Plaintiffs were therefore without legal capacity to maintain this action, insofar as it was based on the alleged illegality of the organization of the sewer district, unless, as plaintiffs maintain, G. S. 1949, 60-1121 granted them express statutory authority. The pertinent portions of this statute read:

"An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same, or to enjoin any public officer, board or body from entering into any contract or doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge or assessment; and any number of persons whose prop-

érty is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act, may unite in the petition filed to obtain such injunction: . . ."

Undoubtedly, 60-1121 grants individuals the right to enjoin the levy or collection of illegal taxes, or to enjoin illegal acts which may result in the creation of any public burden or the levy of any illegal tax. It is clear that 60-1121 is limited to attacks which admit the fact of corporate organization and does not grant private individuals the right to attack the existence or organization of the municipal corporation whose acts are directly challenged. Provisions substantially similar to 60-1121 are found in the Kansas statutes as long ago as G. S. 1868, Ch. 80, § 253. With these provisions on the books our decisions have been uniform in denying taxpayers the right to question the legality of the organization of municipal corporations in actions brought to enjoin the levy or collection of taxes. (*A. T. & S. F. Rld. Co. v. Wilson, Treas.,* supra; *Chaves v. Atchison,* supra; *Mason v. Kansas City,* supra; *Wellman v. City of Burr Oak,* supra; *Scamahorn v. Perry,* supra; *Kirts v. Miami County Comm'rs,* supra.)

Notwithstanding these authorities, plaintiffs maintain that *Schur v. School District,* 112 Kan. 421, 210 Pac. 1105; *Kendall v. Elliott,* 177 Kan. 630, 281 P. 2d 1088, and *Tyler v. Common School District No. 76,* 177 Kan. 387, 279 P. 2d 302, support their contention. We cannot agree. In *Schur v. School District,* supra, plaintiff taxpayers sought to enjoin a proposed bond issue and tax levies of defendant rural high school district on the ground of illegalities in the election which authorized formation of the district and issuance of the bonds. The court held it was no justiciable concern of private litigants that there might be an infirmity in the organization of the school district, but since the challenged election also authorized an issuance of bonds the plaintiffs were proper parties to enjoin the bond issue and consequent tax levies under 60-1121. The case is clearly distinguishable from the instant case. In *Tyler v. Common School District No. 76,* supra, plaintiffs were permitted to bring an action to enjoin issuance of school district bonds on the ground that more than one question was submitted on the ballot in the election authorizing the bonds. No challenge was directed at the organization of the district nor was the question of plaintiffs' capacity to bring the action reached or decided. *Kendall v. Elliott,* supra, similarly does not support plaintiffs' position.

In view of the foregoing, we are of the opinion that plaintiffs were without legal capacity to attack the legality or regularity of the organization of the sewer district. Such incapacity extends to the allegations that the boundaries of the sewer district were illegal because of the disregard of the conditional consent of the city of Merriam, that the creation of the district violated statutory provisions, and that lands were excluded from the district after its creation.

Plaintiffs were also barred from challenging the constitutionality of G. S. 1957 Supp., 19-2787 *et seq.* for the same reason. It is clear that a challenge to the constitutionality of the basic law by which a municipal corporation is organized is an attack on the legality of the organization of the district which, as has been demonstrated, is beyond the capacity of an individual litigant to challenge. In *Topeka v. Dwyer,* supra, p. 249, this court refused to permit a private litigant to collaterally attack the constitutionality of a statute authorizing annexation of territory to municipal corporations, declaring:

". . . the rule forbidding collateral question of the existence of municipal corporations . . . rests wholly in expediency, and operates in defiance of other legal doctrines. The consequences to society of allowing private collateral attacks upon the existence of cities would be intolerable, and hence courts are concerned with the question, not if there exists a valid law, but if considerations of the public welfare shall forbid any inquiry as to whether or not there is a valid law; not if constitutional limitations have been transgressed, but if the public tranquility and the effective administration of government require that the matter of validity, or invalidity, shall be ignored and a situation of affairs be arbitrarily recognized as if it were legal, whether in fact it be so or not."

We come next to the question of whether plaintiffs' petition stated a cause of action insofar as it alleged irregularities in the special bond election which authorized issuance of bonds to pay for construction of the sewer system. Plaintiffs alleged first that the election was not conducted by the election commissioner of Johnson county as required by G. S. 1949, 19-3419 *et seq.,* and that the notice of election listed polling places by nonexistent precincts. It is apparent that special elections of sewer districts organized under the provisions of G. S. 1957 Supp., 19-2787 are governed specifically by the provisions of that statute. G. S. 1957 Supp., 19-2791 provides that special elections to authorize construction of sewers and to incur expenses therefor are to be called by the governing

body of the district, and the governing body of the district shall state the time and place of voting in the election notice.

Plaintiffs' allegation that the resolution calling the bond election was not passed until after the first publication of the notice of election was similarly without merit. In *City of Aurora v. French*, 126 Kan. 393, 268 Pac. 93, the first notice of a municipal bond election was published one week before the ordinance calling the election. This court held that publication of the first notice before publication of the ordinance was an irregularity which did not affect the informative quality of the notice or the validity of the election.

Plaintiffs next alleged that defendants committed or permitted "such irregularities and unlawful and fraudulent acts as to cast uncertainty on the result of the election of May 27, 1958, and require rejection of the entire vote." Specifically, plaintiffs alleged that electioneering was permitted within the polls by persons favoring the question submitted, the registration books were not available at the polls to determine eligible voters, the polls were closed before 7:00 p. m., certain authorized persons were not permitted to act as watchers, unauthorized persons were allowed to handle the ballots while they were being counted, and the polls were opened after closing to permit certain known persons to vote. Finally, they alleged that certain unqualified persons were permitted to vote and certain qualified persons were denied the right. No allegation was made that the alleged illegalities changed the result of the election. Defendants contend that in alleging election irregularities it is necessary to plead that enough illegal votes were cast to change the election. Plaintiffs, on the other hand, maintain that where fraud is exercised in the conduct of an election the entire vote will be ignored, since it is impossible to determine how many votes were honest.

It has long been the rule in this jurisdiction that in challenging the results of an election plaintiffs must plead and prove the irregularities complained of changed the result of the election. (*Olson v. Fleming*, 174 Kan. 177, 254 P. 2d 335; *Brown v. Summerfield Rural High School Dist. No. 3*, 175 Kan. 310, 316, 262 P. 2d 943; *Stanhope v. Rural High-school District*, 110 Kan. 739, 205 Pac. 648; *State, ex rel., v. City of Lawrence*, 98 Kan. 808, 160 Pac. 217, and cases cited therein.) In *Tarbox v. Sughrue*, 36 Kan. 225, 232, 12 Pac. 935, we said:

"It has always been held, and is not disputed, that illegal votes do not void an election unless it can be shown that their reception affects the result;

and where the illegality consists in the casting of votes by persons unqualified, unless it is shown for whom they voted it cannot be allowed to change the result."

In *Stanhope v. Rural High-school District*, supra, p. 744, we stated:

"We have often held that irregularities in elections, where there had been departures from directory provisions of the statute, did not vitiate such elections where such irregularities did not frustrate or tend to prevent the free expression of the electors' intentions, nor otherwise to mislead them."

The fact that plaintiffs alleged the election irregularities were fraudulently committed does not change the legal effect of their petition. Fraud is merely a conclusion of law which is based upon facts. Those facts must bear such relation to the result of the election as to challenge it; *i. e.*, it must be pleaded that the alleged facts affected the result of the election. The addition of the word "fraudulent" to an allegation otherwise insufficient will not create a cause of action.

We are of the opinion that plaintiffs' petition failed to state a cause of action challenging the special bond election. Since plaintiffs were without legal capacity to maintain so much of their action as challenged the organization of defendant sewer district the demurrer to plaintiffs' petition was properly sustained. The judgment is affirmed.

It is so ordered.