No. 28,580.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, *Appellee*, v. STONEHOUSE DRAINAGE DISTRICT No. 1, *Appellant*.

(275 Pac. 191.)

Opinion filed March 9, 1929.

*A. E. Crane, B. F. Messick, A. H. Crane,* all of Topeka, and *H. T. Phinney,* of Oskaloosa, for the appellant.

*Lloyde Morris,* of Oskaloosa, *Robert Stone, James A. McClure, Robert L. Webb* and *Beryl R. Johnson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the board of county commissioners of Jefferson county to enjoin a drainage district of that county and its officers from assessing and levying a tax against the improved county and state highway within the drainage district for the improvements to be made therein. Defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer and the defendant has appealed from that ruling.

The material allegations of the petition are that the defendant drainage district was duly organized under the Laws of 1905, chapter 215 (R. S. 24-401 *et seq.*) ; that the petition for the creation of the drainage district embraced by its boundaries a large tract of land and property in the southern part of the county bordering on or in the vicinity of Stonehouse creek, a tributary to the Kansas river, and alleged that all such lands and property are subject to injury and damage from overflow of Stonehouse creek, a natural watercourse; that the improvement of the channel of such watercourse, the construction of levees, drains and other works, are necessary to prevent · such overflow, and that such improvements and works will be conducive to the public health, convenience and welfare. This petition was filed with the board of county commissioners September 4, 1917, and granted December 4, 1917. The petition herein further alleges that included in the geographical area of the drainage district so created are located certain highways which have been improved by plaintiff and which are described from the Williamstown junction as: (*a*) Road north U. S. highway No. 73 W.; (*b*) road west U. S. [Kansas] highway No. 10; (*c*) road south to Williamstown; (*d*) road east U. S. Highway No. 73 W. Kansas No. 10; and (3) Stonehouse creek bridge on Kansas highway No. 10; that road (*a*) is bituminous macadam and has been built several years; roads (*b*), (*c*) and (*d*) are of concrete surface and were completed in 1926, and that the bridge (*d*) was built in 1926 at a cost of $16,000, of which $6,000 was made necessary to comply with an order of defendant that it be built with a 90-foot span so as to provide for the improvement of the creek, instead of a 50-foot span; that defendant obtained from

its engineer a physical valuation of the bridge and highway improvements above described; that in making such valuation the engineer used the basic cost of the improvements of such highways and bridge after allowing for depreciation; that thereafter and about March 8, 1928, defendant, having assessed the valuation of other property within the district, held a meeting for the purpose of equalization and to hear complaints, protests and suggestions with respect to such valuation and assessments; that at such meeting defendant adopted the valuation of its engineer with respect to the highways and bridge above mentioned, which placed their value, before the improvements contemplated by the drainage district, at $54,000, and after such improvements at $59,400, and the tax assessed thereon was $5,400, being ten per cent of the valuation before improvement; that this was the highest rate levied on any property in the drainage district, the property in the district—but not in the flooded area —being assessed at one per cent, one and one-half per cent and two per cent; that plaintiff appeared at this hearing and objected to the assessment against it, for the reasons: (1) That it was not subject to taxation for such benefits; (2) that the valuation upon road (a) should not be levied at ten per cent, but should not exceed two per cent, because it was not within the flooded area and was benefited indirectly only; and (3) that no assessment should be made against the cost of the bridge over Stonehouse creek for the reason that the bridge was built for the benefit of the drainage district and was a part of the work incident to the enlargement of the creek. The petition further alleges that the improvements referred to as (a), (b), (c), (d) and (e) are not upon the tax rolls of the county and are not properly subject to taxation under the law under which defendant was organized and is operating. The prayer was for a permanent injunction against defendant from assessing or levying against plaintiff the tax of $5,400, or any part thereof.

The sole question before us is whether this petition states facts sufficient to constitute a cause of action. The first question to be considered is whether the plaintiff is liable to be taxed by defendant in any sum; and, if that be answered in the affirmative, second, if the tax levied is so unreasonable that it should be held invalid. The section of the statute (R. S. 24-407) conferring powers upon the drainage district, created under chapter 215 of the Laws of 1905, provides how money shall be obtained to conduct the business of

the district and to pay for the improvements made therein as follows:

"*Eleventh.* To annually levy and collect a general tax not exceeding five mills on the dollar on all taxable property within the district, to create a general fund.

"*Twelfth.* To levy assessments and special taxes, if deemed expedient by the directors, upon all of the real estate in the district that may be benefited, to defray the costs of the construction and maintenance of levees or other works or improvements to prevent the overflow of natural watercourses, or the drainage of overflowed lands therein, or that may be conducive to the public health, convenience, or welfare.

"*Thirteenth.* To issue negotiable bonds to pay the cost of widening, deepening and otherwise improving the channels and constructing embankments, drains, levees and other works along the banks of natural watercourses to pay for the purchase or condemnation of land necessary therefor, to prevent overflow and protect the property situated within the district from damage and injury thereby; such bonds to be payable by general taxation of all property within the district when it shall be determined that all property situated within the district will be benefited thereby or that such work or improvement is necessary, or will be conducive to the public health, convenience or welfare, and beneficial to all of the inhabitants of such district: *Provided,* That no such bonds shall be issued until authorized by a vote of the taxpayers, as hereinafter provided."

It will be observed, first, that the district may levy an annual general tax on all the taxable property in the district to create a general fund. This is levied on personal property as well as real property, and is levied on taxable property only. Since all property owned by a county is exempt from taxation (R. S. 79-201, sixth clause), the property here in question is not subject to levy for this purpose. The district has authority, second, to levy assessments and special taxes "upon all the real estate in the district that may be benefited." Now the question is whether these highways and the improvements that have been placed thereon by the plaintiff constitute real estate within the meaning of this statute. In *Comm'rs of Shawnee Co. v. Beckwith,* 10 Kan. 603, it was held:

"In this state it would seem that by the laying out and establishing of a road or highway the public acquire only an easement in the land. The fee in the land never passes to the public, but remains in the original owner."

In the opinion it was said:

"In this state the statutes provide for the establishment of public roads and highways . . . but both the constitution and the statutes are silent as to how much of the land, or what interest therein, shall pass to the public, and how much of the land, or what interest therein, shall remain with the original

proprietor. Therefore we would infer that nothing connected with the land passes to the public except what is actually necessary to make the road a good and sufficient thoroughfare for the public. The public obtains a mere easement to the land. It obtains only so much of the land, soil, trees, etc., as is necessary to make a good road. It obtains the right for persons to pass and repass, and to use the road as a public highway only, and nothing more. (*Caulkins v. Mathews*, 5 Kan. 199, 200, and cases there cited.) The fee in the land never passes to the public, but always continues to belong to the original owner. He continues to own the trees, the grass, the hedges, the fences, the buildings, the mines, quarries, springs, watercourses; in fact, everything connected with the land over which the road is laid out, which is not necessary for the public use as a highway. (Angell on Highways, ch. 7, §§ 301 to 312, and cases there cited.) He may remove all these things from the road, or use and enjoy them in any other manner he may choose, so long as he does not interfere with the use of the road as a public highway. No other person has any such rights. In fact, the original owner has as complete and absolute dominion over his land, and over everything connected therewith, after the road is laid out upon it as he had before, except only the easement of the public therein." (p. 607.)

In *Roberts v. Comm'rs of Brown Co.*, 21 Kan. 247, it was held:

". . . the public, by laying out and establishing the road, does not become the owner of the land covered by the road, but acquires only an easement therein, and the landowner himself still remains the owner of the fee and of everything connected with the land not necessarily for the public use."

In *Bowers v. Atchison, T. & S. F. Rly. Co.*, 119 Kan. 202, 237 Pac. 913, a deed in fact bounded the land on a highway, but without mentioning it. *Held,* the grant extended to the center of the highway subject to the public easement. In the opinion it was said:

"When the highway was established it constituted an easement for the benefit of the public, and the fee of the land appropriated for the way remained in Baldwin." (p. 203.)

It is therefore well established in this state that the adjoining landowners own the fee to the highway. We have a statute (R. S. 12-406) relating to city plats which places the fee of city streets in the county, but this has no application to a highway outside of a city. We should note, also, that by R. S. 24-424 it is provided that when special assessments are levied "such special assessments shall, by the secretary of the board, be certified to the county clerk and entered upon the tax rolls and collected as other taxes under existing laws."

From the above it is clear that the improvements made by the county upon the highways and bridge in question do not constitute

real estate owned by the county. There is no contention that these improvements are on the "tax rolls," neither are any "existing laws" pointed out to us under which such special assessments might be collected. It necessarily follows that these improvements on the highway are not included within the class of property on which special assessments may be levied under this statute.

The third method the drainage district has of obtaining money to pay for improvements is to issue bonds. Since no bond issue is contemplated by the proceedings of the drainage district in this case this provision has no application; but if it were contended that it did, we note that it is provided by R. S. 24-418 that ". . . such bonds are to be paid by a general tax to be levied upon all the taxable property within the drainage district . . ." Since the improvements placed on the highways by the county, if regarded as being owned by the county, are exempt from taxation (R. S. 79-201, sixth clause), they would not be taxable for this purpose.

Appellant calls our attention to language in *Roby v. Drainage District*, 77 Kan. 754, 95 Pac. 399, where it was said, *arguendo:*

"The benefits of a highway, a levee or a drain may be so peculiar that justice would require the cost to be levied upon a part of a township or county, or upon parts of several subdivisions of the state." (p. 757.)

This is true, but it is for the legislature to say how the cost of improvements made in a drainage district shall be paid. In chapter 34 of the Compiled Laws of 1879, relating to drainage, there was a provision in section 15 to the effect that when the improvement made benefited a county or township road the expense of the work should be apportioned and a part of it set off to the county or township. The validity of that provision was sustained in *Sargent v. Burch*, 26 Kan. 581. A similar provision was made in the drainage act of 1911 (R. S. 24-620). There is no such provision in the drainage act of 1905 under which the defendant district was organized, but, on the other hand, this act provides specifically how moneys shall be acquired for the general fund and for improvements to be made in the drainage district, and omits to charge any part of such expense to the county because of improvements it has placed on highways. Neither can it be said that the matter was overlooked by the legislature when it enacted chapter 215 of the Laws of 1905, for it dealt with the question of right of ways by providing, in section 21 of the act (R. S. 24-422) that the right of way of railroad

companies within the drainage district be deemed and treated as real estate. This indicates a clear legislative intent to exclude other right of ways from the cost of the improvements made in a drainage district.

Our attention is called to *Cuming County v. Bancroft Drainage District,* 90 Neb. 81, in which the supreme court of that state seems to hold that the county is liable for a part of the expense of the work done in a drainage district if it does, in fact, benefit an improved highway within the district, notwithstanding the fact that the statute does not specifically so authorize. We have not examined the statutes and other decisions of Nebraska, with a view of determining the soundness of the opinion referred to in view of the statutes and the previous holdings of that court, but in this state it has uniformly been regarded as the function of the legislature, in creating a drainage district and providing for improvements to be made therein, to determine the manner of raising the money for payment of such improvements. We have been cited to no opinion of this court expressing a contrary view, hence to follow the cited Nebraska case would, in this state, amount to judicial legislation. We regard the question of how the improvements in a drainage district shall be paid for to be a proper subject for the determination of the legislature rather than for the court. If the legislative method provided proves unjust the remedy should be amended legislation.

We conclude it was not error for the court to overrule the demurrer to plaintiff's petition, and the judgment of the court below is affirmed.