No. 31,086

Jere Kimmel et al. and The St. Joseph & Grand Island Railway Company, *Appellants*, v. The Wolf River Drainage District, *Appellee*.

(25 P. 2d 585.)

 Opinion filed October 7, 1933.

*Walker F. Means, Lloyd S. Miller, Paul B. Bailey*, all of Hiawatha, *T. M. Lillard, O. B. Eidson, Olin Buck*, all of Topeka, *W. B. Dickinson, Martin B. Dickinson*, both of Kansas City, Mo., and *R. L. Douglas*, of St. Joseph, Mo., for the appellants.

*F. M. Pearl, John L. Gernon* and *Roy V. Nelson*, all of Hiawatha, for the appellee.

*Lee Bond*, of Leavenworth, *amicus curiæ*.

The opinion of the court was delivered by

Burch, J.: This appeal was taken by taxpayers from a judgment rendered against them in litigation with a drainage district.

In December, 1929, a petition was presented to the board of county commissioners of Brown county for incorporation of the Wolf River Drainage District. The district was created, and directors were elected. The directors concluded the boundary of the district should be enlarged to include property which would be benefited, and, pursuant to proceedings to that end, the board of county commissioners created the enlarged district. Pursuant to subsequent proceedings, the drainage project was undertaken and has been carried to completion. The improvement cost money, and some taxpayers, by a series of lawsuits, have undertaken to prevent construction, to prevent collection of taxes and assessments to pay for the work and

maintain the district, and to prevent appropriation to use of the district of taxes and assessments paid by other taxpayers to the county treasurer. (*Wolf River Drainage Dist. v. Nigus*, 133 Kan. 742, 3 P. 2d 648.) Six suits were consolidated for trial and, as indicated, a judgment adverse to the taxpayers was rendered, from which they appeal. One of the taxpayers was the St. Joseph & Grand Island Railway Company, to be called the railway company. The others, to be called the taxpayers, were owners of ordinary taxable property. Their contentions may be considered first.

The taxpayers say the following questions are involved:

"1. Is it necessary to the taxing powers of a drainage district that its boundaries be defined or that the territory included therein be defined (see R. S. 24-403)?

"2. Can defendants or any of them levy and/or assess general and/or special taxes on plaintiff's lands for the Wolf River Drainage District of Robinson, Brown county, Kansas, if the petition for the organization of said district and/or the petition for the enlargement of the district did not describe the territory proposed to be incorporated and/or the territory to be included in the district as enlarged by definable boundaries and if the record of the organization of the district made by the board of county commissioners does not define the territory within the limits of said drainage district and/or the enlargement thereof so that the territory within said district can be ascertained from said petition and/or from said record (see R. S. 24-406)?"

Those questions are not involved in the appeal.

The taxpayers say boundary lines in petitions and notices do not close, descriptions are erroneous, indefinite, inaccurate, and insufficient, lands cannot be identified as within or without the district, and lands cannot be located or their quantity or extent determined by survey. The taxpayers do not contend their lands have not been described, but they say that without sound petitions and proper notices the board of county commissioners had no jurisdiction to create the corporation, and there can be no corporation unless it has a defined boundary excluding what is outside of it and inclosing identifiable land which would be affected by the tax proceedings necessary to accomplish the object of incorporation.

A petition was presented to the board of county commissioners for creation of the drainage district which described land. With the petition was filed a plat embracing a territory two miles wide and six and one-half miles long, describing land. Notice of hearing on the petition was given which described the land as it was described in the petition, except a tract which at the hearing the owner re-

quested should be included in the district, which was done. The commissioners undertook to create the district. The petition for enlargement of boundary described land, and the notice of hearing described land by metes and bounds and tract descriptions. Plats were made by engineers. The commissioners undertook to create the enlarged district, which became the Wolf River Drainage District. The directors, assuming a district had been created and they were directors, proceeded to begin and to finish the work for which the district was organized. Whether the district has functioned regularly or irregularly, it has functioned as if it were lawfully organized. The court has held so many times that persons in the situation of the taxpayers are not permitted to question integrity of corporate organization, it would be supererogatory to collate the cases. Nobody but the state can do that, and in this instance the state has not interfered.

The taxpayers contend they can raise the questions they endeavor to raise under the decision in the case of *Schur v. School District*, 112 Kan. 421, 210 Pac. 1105. The questions are questions going to lawful existence of the corporation, and the decision in the Schur case pointed out that taxpayers may not question lawful existence. In the Schur case, doubtless to save time and expense, one notice was used in two ways: as a step in creation of a taxing district, and as a step toward issuance of bonds by the district to be created. It was held taxpayers could not question the notice, although bad in description of territory, as a step in creation of the district, and so disorganize it. If a district has been organized, whether on good notice or on notice which taxpayers cannot question, the district may issue bonds. A notice of bond election, good according to the circumstances under which it is given, is essential. Treated purely as a bond-election notice given as if in the exercise of corporate function by a district whose existence could not be questioned by taxpayers, the Schur notice could be attacked, but the attack could not be carried back to organization. No such situation exists in this case. Nothing is attacked here except the statutory steps beginning and ending in organization. The drainage statute expressly provides collection of general or special taxes or assessments shall not be defeated by reason of any omission, imperfection or defect in organization of the district. When the same taxpayers were here before, urging the same claimed defects in organization they now urge, they were advised they had no standing

to do so, and were advised specifically they could not do so on the authority of the Schur decision. (*Wolf River District v. Nigus*, 133 Kan. 742, 3 P. 2d 648.) The taxpayers rest under the same disability to urge claimed defects in the organization proceeding, other than those which have been referred to.

The Wolf river improvement having been constructed, it must be paid for. No taxpayer has any interest adverse to the taxation necessary to pay for the improvement except as it may wrongfully impose a burden on his property. While several taxpayers may join in an action for relief against an illegal tax or assessment, each one sues for his own protection. If the same defect applies to all or several complainants, they may have the same relief, but no taxpayer may have relief except as the illegal tax affects him. Sometimes the nature of the relief desired may be such that if granted it would affect the entire scheme of taxation. In other instances the relief affects the individual only. It may be inferred from the proceedings that taxpayers who are plaintiffs are not overly concerned about their own taxation. They sought to strangle the drainage project soon after it was instituted, and failing in that, to kill it. Thirty-six pages of their brief are devoted to the subject of defects in organization. Ten pages are devoted to some subjects which may now be considered.

It is said land outside the district is assessed. That does not hurt any taxpayer in the district. It is said benefits are not assessed against land inside the district. The law contemplates that it may be discovered land within a district is not benefited. Only benefited land may be assessed. If benefited land be not assessed, that does not authorize the owner of benefited land to enjoin the project or his assessment. The remedy is to call attention of the drainage board to the need of a supplemental assessment. (R. S. 24-435.)

It is contended assessments were not made on actual view by the assessors or in good faith. The court did not regard the evidence as sufficient to sustain that contention, and the court's finding against the contention is approved.

It is contended general taxes on property in the district should be enjoined because of noncompliance with the budget law. The law requires itemized estimates of expenditures for the ensuing fiscal year to be made before levies are made, for publication of the proposed budget, and for notice of hearing and hearing on the budget. A feature of the notice is that items of expenditures for the preced-

ing year and items of proposed expenditures shall be printed in parallel columns (Laws 1931, ch. 310, §§ 1, 2). The district published a budget for 1931, and the notice fixed a time for hearing. The purpose of a hearing is stated in the statute:

"Said publication shall also designate a time and place at which such governing body will meet prior to the date on which its annual levy is made, for the purpose of answering questions and hearing objections of taxpayers relating to the budget and the proposed levy and considering amendments relating thereto." (§ 2.)

There is no contention a hearing did not occur. Here is the budget:

"Budget—Wolf River Drainage District, Robinson, Brown county, Kansas.
"Amount expended for the year 1930, $3,962. (Expended for engineers' services, salaries of officers, legal expenses, advertising, printing, and other incidentals.)
"Estimate to be expended for the year 1931, $3,500. (To be expended for engineers' services, salaries of officers, legal expenses, advertising, printing, and other incidentals.)"

The items of the budget all belonged to one fund specially authorized by the statute, the general fund. The items were all purely contingent, even as to compensation of officers. Except as to compensation of officers, the items were in fact classifiable as incidental expenses, specific amounts of which could not be estimated, but for which the board could fix a limited sum. As illustrating indefiniteness, the board could not estimate how many more lawsuits would be commenced against the district.

The budget notice disregarded the statute. The general fund for 1930 and the estimated general fund for 1931 were printed parallel, as the statute required, but they were horizontally parallel, and not in vertical columns.

Leaving these matters at one side, the effect on taxation of preparation and publication of budget is stated in the statute:

"And no such taxing body shall certify a levy to the county clerk which it estimates will raise an amount in excess of that portion of such budget to be derived from such levies, or which will exceed the maximum levies prescribed by law for such taxing district." (§ 1.)

There is no pretense this provision of the law was violated.

The statute provides its own penalty for violation of its terms, fine or imprisonment of the delinquent official.

The court does not propose to interpret the budget law generally; but in this instance the court is inclined to the view the contention

that general tax levies should be nullified on account of noncompliance with the budget law, borders on the frivolous.

The general course of the Wolf river may be described as from west to east. The drainage-district improvement ends at the line between Brown and Doniphan counties. For several miles in Doniphan county the river channel is not improved. It is narrow, tortuous and obstructed, and is incapable of taking care of flood water delivered to it by the improved channel above. The result is that benefit of the improvement at the lower end was in dispute. Benefit to improved flooded land was assessed at $17 per acre throughout the district. The court reduced the assessment 30 per cent in the last half mile of the improvement, and 20 per cent in the next half mile. One taxpayer has land in the last half mile, and another has land in the next half mile.

The taxpayers contend the court was not authorized to reduce the assessment, and that the reduction was not sustained by evidence. Specifically, the taxpayers' brief says:

"The court should have sustained the injunction as prayed, or the court should have complied with R. S. 24-436, and should have ascertained the amount of benefit which accrued to each tract of property at the lower end of the district; inasmuch as the court had no evidence, and inasmuch as it was a fact ascertainable, the court should not have assumed to change the assessments, but the injunction should have issued."

The statute referred to reads:

"In case any special assessment shall for any reason be set aside as erroneous by any court, such court shall ascertain the amount of benefit which accrued to the property on which the erroneous assessment was made by reason of the work or improvement for which such erroneous assessment was levied, and insert a finding thereof in its judgment, and the board of directors shall thereupon relevy such assessment in accordance with the finding of the court, and such assessment shall thereupon become a lien upon the property assessed and shall be collected as other assessments." (R. S. 24-436.)

The question as presented reduces to one of procedure, and in essence and effect the court simply abridged the procedure and found the benefit to lands in the last half mile was 70 per cent, and in the next half mile 80 per cent, of the original assessment. The assessments indicated by the court were relevied by the drainage board.

There was testimony that conditions at the east end of the improvement would be worse after the improvement than they were before. The court was authorized to discount this testimony, and evidently did so. The taxpayers say benefits could be determined,

and there was testimony they could be determined within 5 per cent; but the conditions under which the determination could be made prohibited it, so far as this litigation is concerned. The amount of benefit to land toward the end of the ditch was problematical. The testimony on which the court doubtless relied was that of George S. Knapp, chief engineer of the division of water resources of the state of Kansas:

"Q. The effect of the ditch, Mr. Knapp, will not be to benefit the landowners at the extreme east end of the district, in any way, do you think? A. Not clear to the end of the district. That is, I think we can safely say that the benefit of this present improvement, so long as it's not carried on, at least reaches zero by the time the end of the project is reached."

Under all the circumstances, this court declines to interfere with the action of the district court, and the judgments in the taxpayers' cases are affirmed.

Turning to the case of the railway company, the benefits assessed against it were $11,100. This was done practically on valuation of the railway company property by the tax commission for levy of general taxes. This was clearly erroneous. Besides that, the court found the assessment was unreasonable; was out of proportion to the benefit which the property would receive; exceeded the amount of benefit which might lawfully be assessed; and that the railway company would receive no benefit from the improvement at the lower end of the ditch. Therefore, the court reduced the assessment from $11,100 to $10,100. Without debating the subject, the reduction was wholly insufficient to correct the unreasonableness of the assessment.

In its motion for new trial, the railway company asserted the benefit to its property from the improvement could not conceivably be in excess of $6,000. This court agrees, and the finding of the district court relative to benefit to the railway company is modified to read $6,000 instead of $10,100. As modified, the judgment of the district court in the railway company's case is affirmed.