No. 44,234

E. F. Schulenberg, Roy Taber, Mrs. M. Van Valkenburg, Earl Love, Emmett L. Jackson, H. P. Loomis, W. D. Pearson, Arthur G. Green, Noble W. Jones, Warren D. Parry, W. W. Parry, R. L. Booth, Clarence E. Jones, W. A. Keller, N. E. Pyle, J. W. Newman, James Smith, H. J. Linsey, Mrs. Floyd B. Reed, H. J. Brown, Myron VanGundy, Walter S. Briggs, Fred F. Barrett, Roy D. Mochamer, Jr., H. L. Rouland, R. D. Mochamer, Louis Rix, Leo DeDonder, Fred Dreasher, W. W. Coffman, Fred Matile, W. H. Brown, *Appellants,* v. The City of Reading, Kansas, A Municipal Corporation, and Lee Cowden, as Mayor, Louis Whittington, Roy Johns, Patrick Duggan, Charles Schlobohm, and Ronald Hooper, as Council Members, and J. M. Hensen, as City Clerk, *Appellees.*

(410 P. 2d 324)

Opinion filed January 22, 1966.

*Leonard W. McAnarney,* of Lyndon, argued the cause and was on the briefs for appellants.

*John G. Atherton,* of Emporia, argued the cause, and *Samuel Mellinger,* of Emporia, was with him on the briefs for appellees.

The opinion of the court was delivered by

Fatzer, J.: This action was brought by a group of taxpayers pursuant to K. S. A. 60-907, to enjoin the collection of special assessments made by the city of Reading for the purpose of financing the construction of a sewer system.

Reading is a city of the third class, and acting pursuant to K. S. A. 12-617 and 12-618 it created a sewer district comprising the entire area within the corporate limits, except a very small fractional part of the area was omitted from the sewer district. Prior to the construction of the sewer system in controversy, the city had no sewer

and it had not been divided into sewer districts as provided in K. S. A. 12-618. The sewer construction was completed, and the governing body of the city enacted Ordinance No. 546 which levied assessments on each lot or piece of real estate within the sewer district, including real estate owned by joint common school district No. 4 and joint rural high school district No. 4, Lyon and Osage Counties. The ordinance further provided that if the assessments were not paid in a lump sum, the city would issue improvement bonds which would be payable in part for assessments made against the property of the school districts.

The action was commenced on March 11, 1964, the day preceding the expiration of the 30-day period fixed by K. S. A. 12-618 to set aside the special assessments imposed upon the real estate owned by the school districts. The plaintiffs are individual taxpayers and reside and own real and personal property in one or both of the joint school districts, and none of them reside within the city except J. W. Newman. The defendants are the city, the members of the city council and the city clerk. The plaintiffs' motion to make the county clerks of Lyon and Osage Counties additional parties defendant was not ruled upon. On motion of the defendants, the district court dismissed the action for the reason that the plaintiffs failed to state a claim against the defendants upon which relief could be granted. As applied in this case, the motion to dismiss may be treated as the modern equivalent of a demurrer, and questions presented must be decided from the well-pleaded facts of the plaintiffs' petition. (*Parker v. City of Hutchinson*, 196 Kan. 148, 410 P. 2d 347.)

Generally speaking, the boundaries of both school districts are conterminous and the city is located within their boundaries. The school districts jointly own and occupy a common school site located within the city, and pursuant to the ordinance, the city made special assessments against each of the school districts of $13,500, or a total assessment against both districts of $27,000. The total area of real estate owned by the school districts subjected to assessment was approximately 3 percent of the total area included within the sewer district in the city. The remaining 97 percent of the total area of lots and pieces of real estate within the sewer district was assessed approximately $2,000.

Real and personal property owned by all of the plaintiffs lies outside of the city but within the school districts, and is subject to

tax levies, special assessments and liens of all taxes that are authorized by law to be levied or assessed against their property by the school boards of either or both school districts and is subject to levies extended upon their property to pay bonded indebtedness of all types whereby either or both of the school districts become obligated in connection with any bond issue. The improvement bonds proposed to be issued by the city to pay the school districts' proportionate share of the special assessments will necessarily be extended upon the property of the plaintiffs and create the additional burden of an illegal tax upon their property. The plaintiffs do not claim, nor was it alleged, that special assessments were made against any property owned by them, other than J. W. Newman who resides within the city, but Newman does not individually object to the special assessments against his city property. In other words, the action was brought to set aside only the special assessments made against the real estate owned by the school districts within the city.

The petition alleged the plaintiffs commenced the action "in their own behalf and in behalf of all other taxpayers similarly situated" as provided in K. S. A. 60-907 (c), and described the real property owned by the school districts. Allegations that the assessments and the proposed issue of improvement bonds by the governing body of the city were illegal, unlawful, fraudulent and void, are summarized:

(1) That under the provisions of K. S. A. 12-618 the city constitutes one sewer district comprising the entire area within the corporate limits and there is no statutory authority to make special assessments against the lots and pieces of ground contained within the district unless the city is divided into separate sewer districts; that the city, as constituting one sewer district, was authorized to construct the sewer system and to pay for the same by the issuance of improvement bonds for which a general tax levy might be extended against the taxable property in the city, but that it was not authorized to make special assessments against individual property owners, and particularly against the property of the school districts;

(2) That the city made "an assessment of $27,000 against the school districts" and did not follow any fair and equitable method of assessment but assessed the property of the school districts on the basis of anticipated usage of the sewer, and that the assessment was an arbitrary, unreasonable and fictitious amount made for the

purpose of causing the school districts, through their governing bodies, to be obligated to make payment of said amounts either as a lump sum or on installment payments, under the proposed improvement bond issue of the city;

(3) That the assessments against the property of the school districts was illegal, unlawful, unreasonable and void because it attempted to assess "over 50 percent of the total cost of the construction of the sewer system" when the real estate owned by the school districts constituted not more than 3 percent of the property subject to assessment, and that the assessment on its face disclosed that it was arbitrary, unreasonable and made for the purpose of causing the school districts to pay a large portion of the costs of the sewer system;

(4) That "the assessment attempted is unreasonable, illegal, unlawful, and void in that a different system was utilized in assessing the property of other property owners," and that the city used a "percent foot" method on all other property except that owned by the school districts, and then applied a fictitious and unlawful formula in attempting to load the unreasonable and arbitrary assessment against the school districts;

(5) That the city governing body "has not lawfully created any sewer district in a lawful manner which would under the statutes of the State of Kansas subject the property of the school districts to any special assessments"; that no valid ordinance was enacted in compliance with K. S. A. 12-618 to create any sewer district for assessment purposes, and that "there is not any record of the proceedings of the governing body with reference to the passage and publication of any such ordinance," and

(6) That the city's attempted creation of the sewer district "in its entirety was an artificial and fictitious creation or attempt to create a sewer district for the express purpose of attempting to have a means of levying or assessing an unreasonable and arbitrary amount of the cost of sewer construction within the corporate limits against the school districts;" that the small assessment against other property was artificial and fictitious in attempting to have legal authority to levy the unreasonable and arbitrary special assessments against the property of the school districts, and that the attempted creation of the sewer district was not a "good faith creation" and amounted to nothing less than "a fraudulent creation," and did not authorize special assessments against the property of the school districts.

The prayer was that the city be enjoined from enforcing Ordinance No. 546 and all other ordinances and proceedings in connection with the attempted creation of a sewer district; that the attempted illegal and arbitrary assessments against the property of the school districts be adjudged unlawful and illegal, and that the city and its governing body be perpetually enjoined from attempting to collect the assessments either as a lump sum or as installments against the property of the school districts, and indirectly against the property of the plaintiffs.

Although not separately stated, we think the petition contains two causes of action. The first cause of action attacks the assessments upon the ground that they are unjust, illegal, unreasonable and fictitious as the result of applying a different method of assessment to the property of the school districts. The second cause of action attacks the creation of the sewer district for failure of the governing body to comply with K. S. A. 12-618, and alleges it was fraudulently created for the purpose of enabling the city to load large and unlawful assessments against the property of the school districts, and indirectly against the property of the plaintiffs.

The questions presented for decision are (1) were the plaintiffs proper parties to maintain the action, and (2) did their petition state a cause of action upon which relief could be granted.

We quote the pertinent portions of Sec. 60-907:

"(a) *Illegal tax, charge or assessment.* Injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) *Joinder.* Any number of persons whose property is or may be effected or whose taxes may be increased by the illegal acts mentioned in subsections (a) and (b) of this section may join in the petition for injunction."

K. S. A. 12-618 empowers the governing body of any city having a population of less than 80,000 to provide for one or more systems of sewerage, or drainage, or both, for the city, or for any part thereof, and to build, construct or purchase sewers or drains and pumping stations as it may determine. It then reads, in part:

"The costs and expenses of constructing or purchasing the said pumping stations, sewers and drains, except as provided in the following section, shall be assessed against the lots and pieces of ground contained within the district in which the same is situated, and shall be levied and collected as one tax, in addition to the other taxes and assessments, and shall be certified by. the city clerk to the county clerk and be placed by him upon the tax roll for collection, subject to the same penalties, entitled to the same rebates and collected in the

same manner as other taxes. . . . That the governing body may in their discretion provide for the payment of the costs thereof by installments, instead of levying the entire tax or special assessment for such cost at one time; and for such installments they may issue improvement bonds of the city in the manner provided by law: *Provided,* That where the governing body of any city has not or may not divide such city into more than one district for sewer purposes, and such entire city thus constitutes one sewer district, such cities are hereby exempted from the provisions of this act insofar as the same provides for the levying of a tax or assessment against specific lots and pieces of ground in separate sewer districts, and such cities are hereby authorized to build and construct sewers and sewer systems, and for the purpose of paying for the same the governing body may issue improvement bonds as provided by law. . . ."

Generally speaking, K. S. A. 60-907 follows the provisions of G. S. 1949, 60-1121 except the provisions have been paragraphed for clarity. (Advisory Committee Notes.) The language is somewhat condensed and simplified, but no change of procedure or substance was intended. (Gard, Kansas Code of Civ. Proc., § 60-907, p. 623.) Since any number of persons whose property is or may be affected by an illegal tax are authorized to join in a petition for injunction (K. S. A. 60-907 [c]), it is unnecessary to consider the provisions of K. S. A. 60-223 which authorizes the bringing of a class action where the right sought to be enforced for the class is several, and there is a common question of law or fact affecting the several rights and a common relief is sought. (2 K. S. A. Code of Civ. Proc, § 60-223, p. 231, Law Review and Other Commentaries.)

The petition alleged the special assessments levied against the school districts' property was illegal, unlawful, unreasonable and void and did not follow any fair and equitable method of assessment; that an arbitrary, unreasonable and fictitious amount was assessed against the school districts' property for the purpose of causing the school districts, through their governing bodies, to be obligated to make payments of such amounts; that all property within the school districts, including the plaintiffs' property, was subject to tax levies to pay bonded indebtedness of all types whereby the school districts became obligated, and that the improvement bonds proposed to be issued by the city to pay the school districts' proportionate share of the special assessments will necessarily be extended upon the property of the plaintiffs. We think the plaintiffs are proper parties to maintain the action. In *Tripp v. Board of County Commissioners,* 188 Kan. 438, 362 P. 2d 612, it was said:

"One may maintain an action for injunctive relief under section 60-1121 when he alleges wrongful and illegal matters which affect his pocketbook by

unlawfully increasing his taxes (*Home Riverside Coal Mines Co. v. Mc-Auliffe,* 126 Kan. 347, 268 Pac. 986; *Drenning v. City of Topeka,* 148 Kan. 366, 81 P. 2d 720; *Wright v. School District,* 151 Kan. 485, 99 P. 2d 737). . . ." (1. c. 441.)

In *Kendall v. Elliott,* 177 Kan. 630, 281 P. 2d 1088, it was said:

"G. S. 1949, 60-1121, provides that an injunction may be granted to enjoin the illegal levy of any tax or the collection of any illegal tax, and that any number of persons whose property is or may be affected by a tax or assessment so levied may unite in the action filed to obtain such injunction. We think that clearly plaintiffs' action falls within the purview of that statute. . . ." (1. c. 632.)

In *Bishop v. Sewer District No. 1,* 184 Kan. 376, 380, 336 P. 2d 815, it was again stated that undoubtedly Section 60-1121 grants individuals the right to enjoin the levy or collection of illegal taxes, or to enjoin illegal acts which may result in the creation of any public burden or the levy of any illegal taxes.

As previously indicated, plaintiffs' petition alleged that the special assessments made against the property of the school districts were based upon anticipated usage of the sewer and that the total assessment of $27,000 was extended against real estate owned by the school districts which constituted not more than 3 percent of the property subject to assessment, while the remaining 97 percent of the total area of real estate within the sewer district was assessed approximately $2,000 on the basis of a "percent foot" assessment.

K. S. A. 12-618 provides that the costs and expenses of constructing a sewer system "shall be assessed against the lots and pieces of ground contained within the district." Inherent in that requirement is the rule that the assessments so made must be fair, just and equitable, and if palpable injustice results so that it is patent and obvious that the burden imposed is entirely disproportionate to benefits received courts will, under their equity power, grant relief. (*Gulf Railroad Co. v. Morris,* 7 Kan. 210, 229; *Railroad Co. v. Mitchell County,* 110 Kan. 582, 204 Pac. 729; *Hurley v. Board of County Commissioners,* 188 Kan. 60, 360 P. 2d 1110; *Railroad Co. v. Abilene,* 78 Kan. 820, 98 Pac. 224.)

In *Hurley v. Board of County Commissioners,* 188 Kan. 60, 360 P. 2d 1110, it was said:

"As abstract academic propositions, the correctness of defendants' contentions perhaps may be conceded. It also is conceded that ordinarily courts do not, and should not, 'second guess' administrative bodies, such as a board of county commissioners, in a matter of this kind. On the other

hand, while the right of the legislature to enact the above-quoted provision pertaining to assessment on an area basis is not questioned—it by no means follows that the board's finding of an equality of benefits is conclusive—for whatever method may be adopted for the apportionment and assessment of benefits from special improvements, it must be just and equitable, and if palpable injustice results from its application equity will step in and grant relief. . . ." (1. c. 65.)

Obviously, and on its face, the special assessments made against the property of the school districts were entirely disproportionate to the assessments made against the remaining property and were based upon a completely different method of assessment. The facts alleged by the plaintiffs are a matter of public as well as private concern and of vital importance to both. We are of the opinion that, under the allegations of the petition, the plaintiffs were proper parties to maintain the action under K. S. A. 60-907, and the fact that they did not own property or reside within the city and that special assessments were not extended against their individual property (except J. W. Newman), or that the special assessments in question were made only against the property of the school districts, or that the school boards did not protest the assessments and bring an action to challenge the validity of the special assessments, does not preclude the plaintiffs from maintaining the action. In the language of the statute, injunctive relief may be granted to enjoin the illegal levy of any tax, charge or assessment or the collection thereof, and any number of persons whose property is or may be affected, or whose taxes may be increased by such illegal acts, may join in a petition for an injunction. The statute authorizes private taxpayers to make direct attacks on illegal levies where the alleged wrongful and illegal levies affect their pocketbooks by unlawfully increasing their taxes. A few of our many cases are: *Schur v. School District,* 112 Kan. 421, 210 Pac. 1105; *Pfeifer v. Klug,* 114 Kan. 384, 219 Pac. 498; *Jackson v. Joint Consolidated School District,* 123 Kan. 325, 255 Pac. 87; *Tripp v. Board of County Commissioners,* supra; *Kendall v. Elliott,* supra, and *Bishop v. Sewer District No. 1,* supra.

Does the plaintiffs' petition allege a cause of action upon which relief may be granted? In discussing this question, we consider whether the plaintiffs have legal capacity to sue since the city argues they may not challenge the organization of the sewer district in an action attacking the assessments made against the school districts' property. The city cites and relies upon *Bishop v. Sewer District No. 1,* supra, and cases cited therein.

The *Bishop* case was a taxpayers' action to enjoin a sewer district and its officers from levying a protested tax on their property. We adhere to the rule announced in that case, that 60-1121 grants to individuals the right to enjoin illegal acts which may result in the creation of any public burden or the levy of any illegal tax, and in authorizing such an action, the statute is limited to attacks which admit *corporate existence* of the taxing district or municipality which levied the taxes, and does not grant private individuals the right to attack the existence or organization of the municipal corporation whose acts are directly challenged. This has long been the rule in this state with respect to the corporate organization or reorganization of cities (*Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417; *Chaves v. Atchison,* 77 Kan. 176, 93 Pac. 624; *Wellman v. City of Burr Oak,* 124 Kan. 780, 262 Pac. 607; *Smith v. City of Emporia,* 168 Kan. 187, 211 P. 2d 101, 13 A. L. R. 2d 1272); of actions challenging the legality of the organization of school districts (*A. T. & S. F. Rld Co. v. Wilson, Treas.,* 33 Kan. 223, 6 Pac. 281; *Scamahorn v. Perry,* 132 Kan. 679, 296 Pac. 347; *Shaffer v. Ford County Comm'rs,* 133 Kan. 256, 299 Pac. 613; *School District v. Shawnee County Comm'rs,* 153 Kan. 281, 110 Pac. 744; *Kirts v. Miami County Comm'rs,* 168 Kan. 739, 215 P. 2d 642), or of claims that drainage districts were illegally or invalidly organized (*Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855; *Euler v. Rossville Drainage District,* 118 Kan. 363, 235 Pac. 95; *Kimmel v. Wolf River Drainage Dist.,* 138 Kan. 209, 25 P. 2d 585).

This list of authorities is not intended to be exhaustive. Many more of the same import might be cited. The rule announced in them is of universal application, that K. S. A. 60-907 does not grant taxpayers the right to question the legality of corporate existence of political subdivisions or municipal corporations in actions brought to enjoin the levy or collection of taxes. But the rule is limited to actions attacking corporate existence of the taxing district which levied the taxes. It has no application where the district created has no attributes of corporate existence and levies no taxes.

The plaintiffs' action did not attack the corporate existence of the city which levied the special assessments in question. It attacks only the creation of the sewer district which has no attributes of corporate existence as a taxing district of the state. In the *Bishop* case the sewer district had corporate existence. It had the right to sue and be sued, enter into contracts, adopt budgets, levy taxes

and special assessments, establish, operate and maintain a sewer system, create indebtedness and issue bonds to pay for the services authorized. (K. S. A. 19-2788.) In a legal sense, it was a political subdivision or quasi-municipality and the court correctly concluded its corporate existence could not be attacked. But that is not true in the instant case. Here the sewer district possesses none of those attributes. It is not a defendant in this action since it has no official board to sue. It may not levy taxes and special assessments or certify those taxes to proper officials for collection. It has no power to enter into contracts, or incur indebtedness or issue improvement bonds, or to construct, operate and maintain the sewer system. In all these things the city acts, but its corporate existence is not challenged. Under no circumstances may it be said that the plaintiffs' action attacks the corporate existence of the sewer district, and we conclude that the holding in the *Bishop* case is inapplicable to the disposition of this lawsuit.

The duty to provide for the public health is vested in the mayor and city council of Reading. However, the power to create sewer districts and make property liable for special assessments is to be found in the statute. (*State Highway Commission v. City of Topeka*, 193 Kan. 335, 393 P. 2d 1008.) The power of the city governing body is legislative, and discretionary in the legal sense. Courts have no supervisory power over the policy of municipal legislation and are not permitted to substitute their judgment for that of the governing body of the city. This is a fundamental principle of municipal law, and particularly in matters with respect to the law of taxation. Courts can only interfere to curb action which is *ultra vires* because of some constitutional impediment, or lack of valid legislative authority, or unlawful acts under a valid statute, or because action under a valid statute is so arbitrary, capricious, unreasonable and subversive of private rights as to indicate a clear abuse rather than a *bona fide* exercise of power. The rule is stated in *Drainage District v. Drainage District*, 104 Kan. 233, 178 Pac. 433, where it was said:

". . . The directors of the district being invested with the discretion, judgment and authority as to the best means of accomplishing the purpose, may exercise such discretion, judgment and authority without interference or control by the courts, unless bad faith or fraud enters into their action. (*City of Emporia v. Railway Co.*, 88 Kan. 611, 129 Pac. 161; *Marts v. Freeman*, 91 Kan. 106, 136 Pac. 943; *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 169 Pac. 1134) . . ." (l. c. 235.)

It is more specifically stated in *Symns v. Graves*, 65 Kan. 628, 70 Pac. 591, where it was said:

"But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. . . ." (l. c. 636.)

See, also, *Root v. City of Topeka*, 104 Kan. 668, 180 Pac. 229; *City of Emporia v. Humphrey*, 132 Kan. 682, 297 Pac. 712, and *Timmons, Administrator v. McGaughey*, 193 Kan. 171, Syl. ¶ 2, 392 P. 2d 835.

Were the acts of the city governing body in this case unlawful or so oppressive, arbitrary or capricious as to amount to fraud? It has been uniformly regarded as the function of the legislature in providing for the creation of sewer districts and for the construction of sewer systems therein, to determine the manner of raising money for payment of such improvements. The question of how the improvements in a sewer district shall be paid for is a proper subject for the determination of the legislature rather than courts. However, in applying a legislative act, a city governing body may not disregard its provisions. In the instant case, improvement bonds were proposed by the ordinance to be issued by the city. The statute (K. S. A. 12-618) provides that where the city is not divided into more than one sewer district, the city is exempted from the provisions of the act insofar as the same provides for the levying of special assessments against lots or pieces of ground, and for the purpose of paying for the sewer system, the city may issue improvement bonds as provided by law. In the event such bonds are issued, they would be paid by a general tax levy upon the taxable property in the city. (K. S. A. 10-113; 12-618.) Since real estate and improvements thereon owned by a school district are exempt from taxation (K. S. A. 79-201, *Sixth*), the property of the school districts would not be liable for this purpose. (*Jefferson County Comm'rs v. Stonehouse Drainage District*, 127 Kan. 833, 838, 275 Pac. 191.)

Presumptively, the ordinance creating the sewer district was valid, the existence of such facts as were essential to its validity is to be presumed, and the ordinance was sufficient to make a *prima facie* case in favor of the city. However, the plaintiffs allege that under K. S. A. 12-618 the entire city constituted one sewer district and that the statutory procedure was not followed to lawfully create a sewer district which would authorize the city to make special

assessments against any property within the corporate limits and particularly the property of the school districts; that the small area within the corporate limits excluded from the sewer district was purposely omitted to enable the city to make special assessments and thereby reach the property of the school districts which would otherwise be exempt from a general tax levy to pay costs of sewer construction, and that the creation of the sewer district was artificial and fictitious and was not a good faith creation and amounted to nothing less than "a fraudulent creation." The general import of plaintiffs' allegations is that the sewer district, as created, was utilized as a device to enable the city to load large assessments against the property of the school districts and thereby have the plaintiffs' property outside the corporate limits actually finance the construction of the sewer within the city and to require the plaintiffs to pay for what should lawfully be assessed against persons owning property within the corporate limits.

These allegations, if not expressly alleging fraud, allege conduct so oppressive, arbitrary, unlawful and capricious as amounting to fraud, and permit the plaintiffs to inquire into the legality of the creation of the sewer district and whether the city was authorized under the statute to create the sewer district in the manner it did and levy special assessments against lots and pieces of ground within the sewer district.

The conclusion just announced is based upon well-pleaded facts of the plaintiffs' petition and all reasonable inferences to be drawn therefrom. The allegations of that pleading concerning the creation of the sewer district remain susceptible to proof by competent evidence. But that is not true with respect to the validity of the assessments. The record contains defendants' answers to interrogatories submitted by the plaintiffs pursuant to K. S. A. 60-236, which the plaintiffs claim the district court did not consider in sustaining the motion to dismiss. Those answers admit the plaintiffs' allegations that the assessments were made, the amount assessed against the property of the school districts, the areas involved, and the method or formula used. Whether the district court did or did not consider those answers does not change the fact they are admissions of record and permits this court to consider the motion to dismiss as equivalent to a motion for summary judgment (K. S. A. 60-256 [c]). No genuine issue of any material fact exists between the parties and this court is compelled to conclude that the amount of

assessments made against the property of the school districts is palpably unjust, unreasonable and discriminatory and a court of equity should grant plaintiffs relief. Hence, the district court is directed to enjoin the enforcement of the ordinance making such assessments upon the ground it is void.

Other points have been raised by the parties, but in view of what has been said and held, it is unnecessary to discuss and decide them.

The judgment of the district court sustaining the defendants' motion to dismiss the action is reversed, and it is directed to proceed in accordance with the views expressed in this opinion.

It is so ordered.